## J. RICHARDS, ET AL. *v.* E. DAVIS, ASSIGNEE, ET AL.

[Abstract Kentucky Law Reporter, Vol. 7—358.]

### Acceptance of New Note and Mortgage in Lieu of an Old One Satisfies the Older One.

Where the holder of a note and mortgage thereafter accepts a new note and mortgage, which mortgage covers additional real estate and drops out some real estate described in the former mortgage, and by the new mortgage includes accrued interest on the old and shortens the time of the maturity of the debt, and the mortgagee thereby obtains an additional advantage of legal value and new rights intervene, the fact, in the absence of an agreement to the contrary, operates as a novation and extinguishes the first debt, and the mortgagee can not be permitted to maintain an action on the first mortgage in lieu of which the other one was given.

### APPEAL FROM LIVINGSTON CIRCUIT COURT.

November 7, 1885.

OPINION BY JUDGE HOLT:

The appellant, Jeremiah Richards, on February 21, 1873, executed to C. B. Davis a note for $2,088.01, payable twenty-four months thereafter and bearing interest at ten per cent. per annum from date. At the same time the obligor together with his wife executed to the obligee in order to secure the payment of said note a mortgage on five tracts of land, one of which was Prior's island in the Ohio river. Davis, soon after the execution of the note, assigned it to his mother, the appellee, Emily Davis.

On May 21, 1874, C. B. Davis took another note from said Richards for $2,350, being the amount of the principal and interest to that date due upon the other note, payable one day after date and bearing like interest from date. To secure its payment a second mortgage was executed, which embraced all the lands included in the other mortgage save Prior's island, and three additional tracts, or seven in all. The last note and mortgage were executed to C. B. Davis but subsequently assigned by him to his mother. He wrote the body of the note and directed the attorney how to write the mortgage; and as he was acting as the general agent of his mother in the transaction of her business, and as she received the note, the

fact that it was made payable to the son does not alter the question now presented. This action was brought by the appellee, Emily Davis, upon the note and mortgage first executed, seeking an enforcement of the lien upon the lands embraced by it, save so far as they had been sold for prior liens, and alleging that the second note was taken by mistake, and that the last mortgage was executed merely as additional security for the payment of the first note. All of the Prior island land had been previously sold under a prior lien for purchase-money, save seventy-eight acres, which at the institution of this suit belonged to the appellant, Kneplar, Richards having sold it to one Bulser, and he to Kneplar; and since the bringing of this suit the latter has sold it to another party. This contest arises upon the appellee's, Emily Davis', claim to subject it under the first mortgage, while her right to any judgment whatever upon the first note is denied by the appellant, Richards.

Two defenses are presented. One of them arises from this alleged state of case. Richards bought the island from one J. H. Levy in 1864. The latter gave him a title bond, but never conveyed it to him; and after Perry's death, and in 1870 his widow brought an action for dower in the land. His heirs and administrator were made parties upon a cross-petition of Richards and a judgment was rendered for a balance of the purchase-money, and at the sale C. B. Davis became the purchaser of the island, save said seventy-eight acres, and obtained a deed. In the meantime Richards had compromised the dower claim by executing to the widow his note for $500 secured by a mortgage upon the island. She brought suit upon it and made Davis a defendant, as he held a mortgage upon the land. It is alleged that this suit was consolidated with the one she had originally brought for dower; that in them a deed for the seventy-eight acres was ordered to be made to Richards, which he by a written transfer directed to be made to his vendee, Baker; that as this was in May, 1877, and long after the execution of the note sued upon, and as C. B. Davis was a party to the suit, the appellee, Emily Davis, is estopped from now asserting any lien against the land. The record now before us, however, does not exhibit such a state of case. It does not show that the two suits were consolidated, and does not show that on May 22, 1874, the action by the widow upon the $500 note was dismissed, and we therefore dismiss this question.

The testimony of Richards and C. B. Davis is conflicting as to

what passed between them when the second note and mortgage were given, and the writings furnish no light upon the question whether they were in lieu of the first note and mortgage or only additional security. If the latter then it was certainly a novel way of taking it; and it seems strange that a debtor would give a second note for a debt, unless it were intended to be in lieu of the first. It is clear from Davis' own statement that it was not done by mistake. But if his version be accepted from a belief that it was proper and necessary, Richards testifies substantially that the second note and mortgage were executed in lieu of the first note and mortgage; that he was to have the last named note, but never got it; and that the island land was left out of the last mortgage in order that it might be mortgaged to C. B. Davis for the $575 debt. The last mortgage is dated on May 21, 1874, but it was acknowledged on the same day as that to C. B. Davis for the $575 debt. The mortgage for this last named claim was on the seventy-eight acres of island land, and C. B. Davis then owned the balance of the island under his commissioner's deed. It further appears that although the $575 note, which bore ten per cent. interest, was not given until May 29, 1874, yet Davis had agreed with Richards on or about the 22nd of May, 1874, or when the $2,350 note was given, to loan him the $575 and that it should be secured, as was subsequently done. These facts are persuasive in appellants' favor.

The clerk who took the acknowledgment to the second mortgage for the large debt says that when he did so Richards said in substance to him in the presence of Davis that it was in lieu of the former one and to tell his (Richards') wife when he went to take her acknowledgment that it was on different property and would do away with the former mortgage, and that Davis did not dispute it. The note of February 21, 1873, was not payable for twenty-four months. Long before the time expired, and on May 21, 1874, the second note was given, payable one day after date and bearing ten per cent interest. The interest from February 21, 1873, to May 21, 1874, was counted and added to the principal, and the new note given for the entire sum; so that from that date the interest that was put in the new note carried ten per cent. interest, although by the original contract the $2,088.01 was not due until February 21, 1875. All of the tracts of land embraced in the first mortgage were carefully recited in the second one, save the island land, and in the latter were

also embraced three additional tracts; and Mrs. Richards united in it, thus releasing her inchoate right of dower in all the land covered by it. Thus the face amount of the debt was increased, the time of payment was shortened, and a new mortgage to secure it taken, which embraced but a part of the property covered by the old mortgage and other land that had not before been in lieu for the debt. These facts establish both in fact and in law an accord and satisfaction of the first note and mortgage, and that the parties so intended. The facts within themselves, in the absence of fraud or mistake, which must be clearly made out, constitute an accord and satisfaction of the first note and mortgage. The new agreement annulled the old one. The new one was materially variant from the first one and obviously more advantageous to the obligee.

In the case of *Tomlin v. McChord,* 6 J. J. Marsh. (Ky.) 1, 5, this court said: "A material change in the contract, advantageous to the obligee, such as shortening the time of payment, or giving other security, may make the new obligation a valid satisfaction of the former one." In this instance the creditor by the new arrangement obtained something of legal value to which he was not before entitled; it gave him an advantage. One chose-in-action may be a satisfaction of another, if so accepted. It is true that a mere renewal of a note, although it destroys the original evidence of the debt, is not a satisfaction of it; but if in the absence of fraud or mistake the creditor obtains an additional advantage of legal value, and new rights and new interests intervene, then this fact within itself in the absence of an agreement to the contrary operates as a novation and extinguishes the first debt.

The court below should have dismissed the action and the judgment below is *reversed* with directions to do so.

*Caswell Bennett, C. H. Webb, for appellants.*

*J. W. Bush, J. C. Hodge, for appellees.*