## Watkins, et al. v. Wallace.

(Decided December 19, 1924.)

### Appeal from Bourbon Circuit Court.

1. Mortgages—Deed and Contract for Resale Held Mortgage.—Where contract, executed on same date as deed to farm, recited that it was given in consideration of grantee's assuming payment of grantors' debts, grantors to continue to live on farm and make all necessary repairs at own expense and pay interest on sale price, with option to repurchase in two years, held, instruments constituted mortgage.

2. Mortgages—In Doubtful Cases, Instrument Construed as "Mortgage."—If instrument is intended as security for payment of money, it is "mortgage," and, if matter is doubtful, instrument will be construed as mortgage.

DENIS DUNDON and CRESS & CRESS for appellants.

TALBOTT & WHITLEY for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Reversing.

On March 7, 1921, Lavinia R. Watkins and her husband, George C. Watkins, in consideration of one dollar and other considerations, set out in a written contract of that date, executed and delivered a deed to James A. Wallace, conveying to him a tract of land, the property of Mrs. Watkins, containing 221 acres lying in Bourbon county and not far from Paris. The written agreement referred to in the deed was signed by all three of them and is in substance as follows:

(1)   In consideration of Wallace assuming the payment of the indebtedness therein set out Mrs. Watkins and her husband sell and agree to convey by a separate deed to him the farm referred to and also assign and transfer to him all of the tools and implements thereon, consisting of one tractor, one binder, one rock crusher, and one silage cutter and pipes, one manure spreader, one mowing machine, one grass seed stripper, one wheat drill, one hay rake, one hay tedder, two cultivators, one tobacco setter, one corn planter, and all tools now on said farm.   (2) Mrs. Watkins and her husband shall live on the farm in the house they now occupy and shall have the use of the income from the cultivation of the land and crops, together with the income derived from raising stock, etc., provided they pay Wallace the interest on the amount of the sale of the land at the rate of 8% per annum.   The agreed price is $250.00 an acre and the interest at 8% is to be paid on the basis of $250.00 an acre. They are also to pay the taxes each year, and are also to keep up the necessary repairs at their own expense, and keep the farm buildings in good repair.   If they keep up the repairs and pay the interest and taxes up to March 1, 1922, then they may continue to occupy the property on the same terms for the ensuing year.   At the expiration of the second year Wallace agrees to sell the farm back to them for the same price, namely, $250.00 an acre, together with all the tools and personal property transferred by the contract.   But in repurchasing the property they are to make a substantial payment of the purchase money, at least one-third or more, at the election of Wallace, and the balance to be paid in one and two years with interest at 8%.   If they comply with this agreement, at the end of the first year Wallace agrees to

convey the property back to them, including the personal property, instead of waiting until the end of the second year. If they fail to live up to the agreement they are to surrender possession of the property to Wallace, who shall thereupon hold it as absolute owner, free of any claims of theirs. (3) The consideration for the sale is to be paid by Wallace on the following indebtedness of Mrs. Watkins and her husband; T. Matt Lair about $32,258.85; to the Bourbon Agricultural Bank about $11,-917.91; to the Farmers Bank of Millersburg about $4,-200.00; to the People's Exchange Bank of Beattyville about $2,500.00; U. S. Howard about $915.00; Farmers Bank of Estill County, Irvine, Kentucky, all notes of Lavinia R. Watkins, George C. Watkins, note of J. S. Watkins and any other notes of Lavinia R. Watkins and George C. Watkins payable to the Farmers Bank of Estill County. (4) If Mrs. Watkins and her husband elect to repurchase the farm when Wallace has not paid the full consideration to be paid on the above indebtedness then in repurchasing the property they will only pay back to him the total amount of purchase money paid out by him, with interest at 8%. But it is agreed that they must pay then all of the unpaid indebtedness to the Farmers Bank of Estill county and all indebtedness upon which Wallace is surety for them before they can require the reconveyance of the property to them.

On March 6, 1923, Watkins and wife brought this suit setting up the above facts and alleging that Wallace had failed to carry out his agreement and praying that the deed be cancelled. By an amended petition they set up that the writings evidence a contract for the borrowing of money and the two read together only constitute a mortgage. They prayed that if the writings were not cancelled that they be adjudged to be only a mortgage. The defendant filed answer denying the allegations of the petition and pleading as a counterclaim that he was the owner of the property; that the defendants had failed to live up to the contract and prayed possession of the property in accordance with the contract and all proper relief. Proof was taken and on final hearing the circuit court entered judgment in favor of the defendant for the possession of the property. The plaintiffs appeal, insisting that the writings only constitute a mortgage and this is in substance the only question made on the ap-

peal. The facts leading up to the execution of the papers are these:

George Watkins for three years was the bookkeeper of the Farmers Bank of Estill county. James A. Wallace was the cashier and owned half the stock. He and Wallace were very intimate. While there he got in debt and Wallace became his surety. His wife also signed some notes of his to the bank as his surety. She inherited from her father's estate about $6,000.00 in personal property and land which she sold for $12,000.00. In March, 1919, she bought of Matt Lair the land referred to for $275.00 an acre. She paid Lair one-half the purchase money and executed notes for the other half. The money she paid Lair was the $18,000.00 she had received from her father's estate; $10,000.00 that she then borrowed from the Bourbon Agricultural Bank and some money otherwise borrowed. The debts of George Watkins on which Wallace was surety including his debts to the bank, of which Wallace was the cashier, were unsecured and amounted to over $15,000.00. In April, 1921, when certain checks of George Watkins to his bank had been returned unpaid Wallace came down to Paris and went out to the farm where Watkins and his wife were living and after some conference between them he returned to Paris and had the papers above referred to drawn, and next day Mrs. Watkins and her husband came in and signed the papers. Wallace testifies that he bought the land and that it was a conditional sale. Mrs. Watkins testifies that he simply asked security and that the papers were executed only for the purpose of securing him against loss. The following circumstances tend to show this: (1) Although a large amount of personal property was included in the transaction there was, so far as appears, no valuation of this property or agreement or discussion as to the price of it. (2) Mrs. Watkins two years before had bought the land for $275.00 an acre. The personal property must have cost her several thousand dollars in addition and it is not reasonable that she would have consented to so large a loss as a sale at the price indicated without more discussion than appears to have taken place. (3) There was no restriction of any sort as to how much land the Watkins should cultivate or how they should cultivate it or how the personal property should be used or as to repairs of the machinery. (4) Wallace was bound for Watkins for a large sum of

money. His purpose was to secure himself against loss for this money. After the arrangement was made Watkins continued liable to the bank as before. The relation of debtor and creditor did not cease as to any of the debts referred to in the writing. (5) Mrs. Watkins and her husband were to pay 8% upon the purchase money if they took back the land and in any event were to pay the debts to the Irvine bank and those on which Wallace was surety for George Watkins. (6) Mrs. Watkins testifies that it was agreed that they might sell the land at any time and Mr. Wallace does not expressly deny this. The facts which they both agree upon sustain her in this statement. If they had resold the land at any time, say for $400.00 an acre, plainly under the agreed facts the surplus, after paying all of the debts would have belonged to Mrs. Watkins.

The rules governing the effect of such instruments have thus been laid down by this court:

"The execution of a defeasance, simultaneously with the absolute conveyance, constitutes them in contemplation of law, one entire instrument, as much as if the defeasance had been incorporated in the conveyance; and will generally have the effect of making the contract a mortgage.

"It is a general rule, that 'where land is conveyed absolutely, and the grantee, by a separate instrument, or defeasance, covenants to reconvey to the grantor, on his paying a certain sum of money, the transaction amounts only to a mortgage.' Edrington, &c. v. Harper, 3 J. J. M. 354.

"Mortgages and conditional sales are both valid, and it is often a matter of great difficulty to determine to which class a particular instrument belongs. The only way of solving the question is to find out what the parties intended. In ascertaining their intention the courts will be guided more by the substance than the form of the transaction, and in doubtful cases will always construe the contract to be a mortgage, as such construction will be more apt to prevent fraud and oppression. Edrington v. Harper, 3 J. J. Mar. 353; Skinner v. Miller, 5 Littell 86. The test in every case is, was the instrument intended as a security for the loan of money or other property? If so, it is a mortgage. Skinner v. Miller,

*supra.* When such appears to be the nature of the transaction, it is immaterial that the lender repeatedly stated that he would not take a mortgage, or adopted other means to conceal the truth." Lunsford·v. Colwell, 199 Ky. 329.

This rule has often been applied by this court. See Honore v. Hutchings, 8 Bush 687; Scholl v. Hopper, 134 Ky. 83, and cases cited. To same effect see 19 R. C. L. 267, 269.

The deed and the writing referred to in it, executed at the same time, must be read together. The two papers so read are a security for the payment of money and under the rule quoted must be held to constitute a mortgage. The farm was the property of Mrs. Watkins. The debts were primarily the debts of her husband. Her purpose was to secure these debts of her husband. Wallace had no intention of buying the farm aside from securing the debts due by George Watkins. The securing of these debts was the real purpose of both the parties in the transaction as shown on the face of the writings, and where the instrument is intended as a security for the payment of money, it only operates as a mortgage. If the matter is doubtful, the doubt is resolved in favor of the grantor.

Judgment reversed and cause remanded with direction to enter a judgment adjudging the writing to constitute a mortgage and ordering a sale of the mortgaged property.