## Talley et al. v. Eastland et al.

(Decided May 10, 1935.)

242

R. W. LISANBY and ALVIN LISANBY for appellants.

MARSHALL P. ELDRED and GEORGE O. ELDRED for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

From a judgment holding a certain instrument to be a deed and not a mortgage, Mrs. Tylene Talley et al. have appealed.

### The Facts.

Some years ago R. E. Butler died intestate and without issue leaving his mother, Nancy Hill, as his sole heir. The First National Bank of Princeton, Ky., became his administrator.

Among the assets that came into its hands were some notes signed by J. Fred Talley and secured by mortgages upon a farm in Caldwell county, Ky. Subject to these liens this farm then belonged to J. Fred Talley in fee simple.

On October 3, 1930, Mr. and Mrs. Talley executed an instrument, which was that day acknowledged and recorded, the essential parts of which are:

### The Instrument in Question.

"This deed made and entered into by and between J. Fred Talley and Tylene Talley, his wife,

of Princeton, Caldwell County, Kentucky, as parties of the first part and the First National Bank, of Princeton, Kentucky, Trustee, party of the second part. Witnesseth, That for and in consideration of the sum of ($2000.00) two thousand dollars and the cancellation of all indebtedness held by the estate of R. E. Butler, deceased, against the land hereafter described and hereby conveyed receipt of which is hereby acknowledged and of the covenants and agreements hereinafter contained, the said parties of the first part have this day bargained and sold and do by these presents grant, bargain, sell and convey unto the said party of the second part, as Trustee aforesaid the following described real estate, viz: (We omit the description.) But it is understood and agreed and this deed is made on the express condition that the said J. Fred Talley and Tylene Talley, his wife, parties of the first part are hereby given one year from date of this deed to redeem said land by paying said sum of $2000.00 without interest but otherwise this deed shall become absolute.''

Mr. and Mrs. Talley continued to live upon the farm, to cultivate and improve the same. Mr. Talley listed it for taxes in his name, paid the taxes thereon, and insured it in his own name with a clause in the policy making the loss payable to the First National Bank, mortgagee.

On October 22, 1931, the bank conveyed this property to the above-named Mrs. Hill. Mrs. Hill thereafter died leaving a will by which she devised this property to her other children, M. F. Hill et al. The insurance was now made payable to M. F. Hill, mortgagee, as his interest may appear.

In 1931 the bank made this deed:

"This Deed of Conveyance, made and entered into this 22 day of October, 1931, by and between the First National Bank, of Princeton, Kentucky, Trustee and Administrator of the estate of R. E. Butler, deceased, intestate, as party of the first part, and Nannie Lowery Hill, of Piggott, Arkansas, sole heir of R. E. Butler, deceased, intestate, as party of the second part.

"Witnesseth: That whereas, the real estate

hereinafter described and hereby conveyed was, on the 3rd day of October, 1930, conveyed by J. Fred Talley and wife to the aforesaid Trustee, to be held in trust by said Trustee for a period of one year, subject to the right of said grantors to redeem same upon payment to said Trustee of the sum of $2000.00 without interest, same being for a debt owed to the estate of said decedent, R. E. Butler and his heirs, said grantors, J. Fred Talley, and wife, have failed to pay to said Trustee said amount, or any part thereof, and said trust period has expired. 'Now therefore, in consideration of the premises, and in order to vest the legal title to the land hereinafter described in the said party of the second part, who is the sole heir and beneficiary of the estate of the said R. E. Butler, deceased, etc.' "

On May 4, 1934, M. F. Hill et al. conveyed this property to the appellees, A. A. Eastland and wife. J. Fred Talley was killed in a railroad accident a few days thereafter. He died intestate, and whatever rights he had in this property passed to his widow Tylene Talley and his six children of whom five were infants. Mrs. Talley qualified as guardian of these infants, and in her own right and as guardian of these infants she joined with her adult son in this suit against Mr. and Mrs. Eastland to recover this land, seeking to have the first deed copied above construed to be a mortgage, and that they be permitted to pay their debt, etc.

### What Is This Instrument?

It will be observed the grantee named is "the First National Bank, of Princeton, Ky., Trustee"; but there is not another word indicating for whom or for what it is trustee, and the question is: What is the effect of the use of this word?

We are persuaded by the opinion in Sansom, Trustee, v. Ayer & Lord Tie Co., 144 Ky. 555, 139 S. W. 778, that this word is merely descriptive and nothing more. When the bank attempted to convey this property to Mrs. Hill (see that deed supra), it described itself as "Trustee and Administrator of the estate of R. E. Butler deceased," and further on it says this property was to be held by it as trustee for a period of one year subject to the right of the grantors to redeem it by paying the $2,000.

One thing is certain, if this was enough to make this a deed of trust to be held by the bank awaiting the payment of this $2,000, then it is only a mortgage, for such, deeds of trust are uniformly held so to be. See Jones on Mortgages (8th Ed.) sec. 77; 41 C. J. p. 290, sec. 31; 19 R. C. L. p. 269, sec. 40. However, the parties in their briefs have not discussed this feature at all, so we shall now take up and consider this instrument in the light of their very able discussion of it, for they were in immediate contact with the parties; they got their impressions, of what this paper is, from the parties themselves; so we shall dismiss this idea and give our attention to the question they have presented.

## Mortgage or Conditional Sale.

Whether such a transaction as this is a mortgage or a conditional sale is a question that has puzzled the courts of America no little, as will be seen by the case of Dickens v. Heston, 53 Idaho, 91, 21 P. (2d) 905, 90 A. L. R. 944 and the 14 pages of annotations following it.

By the case of Parks v. Mulledy, 49 Idaho, 546, 290 P. 205, A. L. R. 934 and the 21 pages of annotations following it.

By Sauer v. Fischer, 247 Mich. 283, 225 N. W. 518, 65 A. L. R. 766 and the 9 pages of annotations following it.

By Pollak v. Millsay, 219 Ala. 273, 122 So. 16, 65 A. L. R. 110 and the 4 pages of annotations following it.

By Mankin et al. v. Dickinson et al., 76 W. Va. 128, 85 S. E. 74, Ann. Cas. 1917D, 120 and 4 pages of notes following it.

Other annotated cases are: Plummer v. Ilse, 41 Wash. 5, 82 P. 1009, 2 L. R. A. (N. S.) 627, 111 Am. St. Rep. 997; Keithley v. Wood, 151 Ill. 566, 38 N. E. 149, 42 Am. St. Rep. 272; Friedley v. Hamilton, 17 Serg. & R. (Pa.) 70, 17 Am. Dec. 638; Harbison v. Lemon, 3 Blackf. (Ind.) 51, 23 Am. Dec. 376; Wallace v. Smith, 155 Pa. 78, 25 A. 807, 35 Am. St. Rep. 868; Edrington v. Harper, 3 J. J. Marsh. (Ky.) 353, 20 Am. Dec. 145; Hutzler Bros. v. Phillips, 26 S. C. 136, 1 S. E. 502, 4 Am. St. Rep. 687, and divers others too numerous to mention.

The result of an examination of these is the conclusion that if there is any doubt whether the transaction is a mortgage or a conditional sale, it will be held to be a mortgage, and that the nature of the instrument is to be determined from the intent of the parties ascertained from the circumstances of the case.

Many facts that might have helped in the solution of this problem have not been brought out. For example, we would like to know the relation other than contractual, if any, between R. E. Butler and Talley and his family. We would like to know the date of R. E. Butler's death, but that does not appear. The same is true of Talley's death and that of Mrs. Hill. However, we can approximate the date of Butler's death from the qualification of his administrator which took place on February 5, 1930.

Talley then owed R. E. Butler's estate a note for $1,500 secured by mortgage, which had been due since December 23, 1920, and a note for $1000 secured by mortgage which had been due since December 30, 1921. What, if any, payments had been made on these notes, and when, does not appear; but certainly some had been made else these notes and interest would have amounted to about $3800, and no one claims any such sum was due.

It is evident that Talley was overwhelmingly indebted when he made the deed of October 3, 1930. In Conway v. Alexander, 7 Cranch, 218, 237, 3 L. Ed. 321, Chief Justice Marshall wrote this:

"Lenders of money are less under the pressure of circumstances which control the perfect and free exercise of the judgment than borrowers, the effort is frequently made by persons of this description to avail themselves of the advantage of this superiority, in order to obtain inequitable advantages. For this reason the leaning of Courts has been against them, and doubtful cases have generally been decided to be mortgages."

Practically the same is to be found in 41 C. J. p. 288, sec. 24. Also see this which is copied from 41 C. J. p. 340, sec. 102:

"If the grantor of a deed absolute in form, but al-

leged to have been intended as a security, was financially embarrassed at the time of its execution, being sorely pressed for money and, therefore, at the mercy of his creditor and unable freely to dictate the terms of his security, this circumstance will be considered as tending to show the intention to create a mortgage."

Thus we have to start with a helpless debtor and an administrator who is anxious to wind up an estate, and with this picture in our mind we will examine this deed.

This deed does not provide that the notes the administrator held should be satisfied by the making of this deed or should be surrendered. It merely cancels the indebtedness as against this land. These notes were not then surrendered. Later they were canceled and delivered to Mr. Eastland and he delivered them to Mr. Talley. No showing is made when these notes were canceled, but in the absence of such showing, the presumption will be they were canceled on the same day the $1,500 mortgage was released, and that was May 21, 1934. The $1,000 mortgage has never been released.

The failure to surrender these notes on October 3, 1930, and then to release these mortgages are not matters of minor importance. In Tygret v. Potter & Co., 97 Ky. 54, 29 S. W. 976, 76 Ky. Law Rep. 809, this court held a transaction somewhat like this to be a conditional sale and stressed, by mentioning it three times in the opinion, the discharge of the debt and surrender of the notes as evidence that a deed and not a mortgage was intended. In Jones on Mortgages (8th Ed.) sec. 400 we find this with authorities cited to support it:

"The fact that the evidence of the indebtedness is retained after the conveyance is strong evidence that the debt was not extinguished and that a mere security was intended."

See, also, 41 C. J. p. 335, sec. 99. The failure to surrender the old mortgage note was stressed in Castillo v. McBeath, 162 Ky. 382, 172 S. W. 669, and that transaction was held to be a mortgage.

Whatever this instrument was in the beginning it is now, in accordance with the maxim, "Once a mortgage always a mortgage," which is quoted in hundreds

of opinions. It is equally true that if it were a deed in the beginning it is a deed now, but this never was intended as a deed in the beginning, and that is shown by the fact that it provides that if Talley does not redeem when and as provided it shall become absolute. If it became absolute on October 3, 1921, when Talley failed to redeem, then it was not absolute before that time, and if not absolute it was a mortgage.

A case on all fours with this one is found in Johnson v. Prosperity L. & B. Ass'n, 94 Ill. App. 260. There was a struggling debtor who conveyed her property. In a separate contract given her were these words:

"Should said first party fail or refuse to pay to said second party the said two hundred and fifty [$250] dollars and all other sums of money by him expended * * * on or before two and one-half [2½] years from the date hereof, then the title to said premises * * * shall vest and become absolute in second party. * * * Time is of the essence of this contract and of all the conditions thereof."

There the lienholder marked his lien note and the trust deed securing it canceled and executed a deed of release to discharge the trust deed, but he retained it unrecorded and the lien note and trust deed in his possession. That was held to be an absolute deed by the trial court, but the judgment was reversed on appeal. The appellate court held it to be a mortgage, and in doing so the court said:

"Every deed or other instrument takes effect from its delivery, and its character thereby becomes at once fixed. It can not, after such delivery, be one thing today and another to-morrow. If a mortgage when delivered, it continues to be such until the right of redemption is barred by some of the modes recognized by law."

In this Johnson Case the grantee had possession of the premises, whereas in the case before us the grantor remained in possession.

Another case where the grantee, under an absolute deed with a side contract to reconvey went into possession and the instrument was held to be a mortgage, is Wiswell v. Simmons, 77 Kan. 622, 95 P. 407.

In Jones on Mortgages (8th Ed.) vol. 1, sec. 325, we find this with numerous cases cited to support it:

> "The continued possession of the grantor * * * is a circumstance tending to show that the agreement for repurchase, in connection with the deed, constitutes a mortgage rather than a conditional sale."

Watkins was left in possession in the case of Watkins v. Wallace, 206 Ky. 264, 267 S. W. 183, and there we reversed the judgment and held the transaction to be mortgage. To same effect, see 41 C. J. p. 340, sec. 104.

Let us remember this deed provides the Talleys are given a year to pay this $2,000, but otherwise it shall become absolute. A mortgage is simply a deed containing a clause of defeasance and no particular form of defeasance is required.

In the case before us a struggling debtor conveyed his property to his creditor described in the deed as "Trustee" with a provision that he might redeem it, and the evidences of his indebtedness were not surrendered to him, but his grantee held them, hence this from section 320, vol. 1 of Jones on Mortgages (8th Ed.), becomes of interest:

> "If the grantee retains the written evidence of the debt in his possession without cancellation, a strong presumption is raised that the conveyance did not extinguish the debt."

It is frequently argued in cases like this, and it is so argued in this one, that the debt was already secured, so why go through the formality of making this conveyance unless the creation of a new relation between the parties be intended?

It was so argued in Castillo v. McBeath, 162 Ky. 382, 172 S. W. 669, where the circumstances were much the same as here, yet that contract was held to be simply another mortgage.

That same argument was made in the case of Johnson v. Prosperity L. & B. Ass'n, 94 Ill. App. 260, and in answer to it that court said:

> "Although it be apparently the intent of the parties to thus make a mortgage which will cut off the

right of the mortgagor to redeem, yet the courts hold that if it appear to have been intended as a mortgage, the right of redemption can not be thus relinquished.''

We are endeavoring to arrive at the intention of these parties when this contract was executed, and the only way we can do that is by an examination of the contract itself viewing it in the light of their conduct then and thereafter; but there is enough here to suggest to us that this contract was executed for the very purpose the Illinois court found that Mrs. Johnson had been required to execute that contract, namely, to cut off Talley's equity of redemption, to avoid the necessity of a foreclosure suit; but let us continue our study.

Talley was given the right to redeem this land by paying this $2,000. What does that mean? If that word "redeem" was used in the sense of repurchase this looks like a sale; on the contrary, if it was used in the sense that the word redeem is used by the ordinary man it means something else. The word "redeem" comes from the Latin word "redimere," which meant to buy back, but that word has come to have a different meaning. See elaborate definition in 53 C. J. p. 663. It now implies the existence of a debt and means to rid property of that incumbrance.

Bane v. Pritchet, 223 Ill. App. 617, was a case much like this one, and in the side agreement in that case the clause in question was:

"It is further agreed that in case said land is not redeemed by first party as above provided within said three years from date hereof, that in such case the warranty deed this day executed between the parties hereto conveying said land to second party, shall become absolute and this agreement shall then become null and of no effect, and it is further agreed that time is of the essence of this contract."

In construing that clause the court said:

"The word 'redeem' implies the existence of a debt and negatives the idea of an absolute sale."

The ordinary man in the street now understands the word "redeem" as to clear his title to property by satisfying some lien or claim another has upon it, as to redeem property he has pawned or mortgaged

In the case of Workman v. Greening, 115 Ill. 477, 4 N. E. 385, 387, a deed regular and absolute had been executed. We will now quote from the opinion:

"At the time of the execution of the deed, and as a part of the transaction, appellant indorsed the following on one of the small notes: 'You can redeem it in a reasonable time by paying me my money and ten per cent. John Workman.'"

Let us note these notes were surrendered to the debtor and Workman had possession of the land, yet the court held the transaction to be a mortgage and in doing so said:

"We must accept his language to mean what the words in their ordinary acceptation import. The word 'redeem' implies the existence of a debt, and negatives the idea of an absolute sale."

In Musgat v. Pumpelly, 46 Wis. 660, 1 N. W. 410, the court held that the word "redeem," when used in legal documents and contracts, is ordinarily understood to mean to release property pledged or mortgaged from the lien or claim of the pledgee or mortgagee. Let us look at the way the administrator regarded this transaction, and we find it said this in the deed it made to Mrs. Hill's heirs:

"The real estate hereinafter described and hereby conveyed was, on the 3 day of October, 1930, conveyed by J. Fred Talley and wife to the aforesaid Trustee, to be held in trust by said Trustee for a period of one year, subject to the right of said grantors to redeem same upon payment to said Trustee of the sum of $2000.00 without interest, same being for *a debt owed to the estate of* ...... *R. E. Butler* and ...... said 'J. Fred Talley, and wife, *have failed to pay* to said Trustee, *said amount,* or any part thereof, and *said trust period has expired.*"

The bank did not take this deed or mortgage to itself as administrator but as trustee. Trustee for what? No answer or explanation is given, but a fair inference is it took this contract in that form to secure the $2,000 the balance then agreed to be due on these old notes, or at least to hold this farm as security for that $2,000. Nothing can be better settled than that in order for

this to be a mortgage there must be a debt for this mortgage to secure, but it is very evident the bank considered this a debt, for *it said so* and it still held the original mortgage notes Talley had given to Butler. It did not have a note for the $2,000, that is true, but that is unnecessary. While there cannot be a mortgage without a debt or some other thing to secure, there can be a mortgage without a note.

In Jones on Mortgages (8th Ed.) vol. 1, sec. 323, we find this:

> "No conveyance can be a mortgage unless made for the purpose of securing the payment of a debt, or the performance of a duty either existing or created or to arise in the future. But it is not necessary that the debt or duty should be evidenced by any express covenant, or by any separate written security. Although a mortgage can not be a mortgage on one side only, but must be 'a mortgage with both parties, yet this principle is applicable to the lien upon the land only, and not to the personal obligation."

Let us look at the subsequent conduct of the parties. In Jones on Mortgages (8th Ed.) sec. 399, we find this:

> "Under the general rule that a party to a contract will be held to the construction that his own actions have put upon it, a party to an absolute deed, having treated it as a mortgage, is bound by such construction."

41 C. J. p. 340, sec. 104, is to the same effect.

Talley remained in possession; he used and controlled the property as before; no rent was fixed or paid. He selected his own tenants and received the rent he agreed upon with them, he insured the property in his own name on November 10, 1930, and on November 17, 1930, a clause was attached making any loss under this policy payable to the First National Bank, mortgagee, as its interests may appear. On May 17, 1933, this clause was changed and the loss made payable to M. F. Hill as his interest may appear. Talley had a small fire loss which was adjusted with and paid to him. Of course the consent of this mortgagee had to be obtained to that, but the record does not show that. For such a course as we have set out above we have held contracts similar to this to be mortgages.

See Watkins v. Wallace, 206 Ky. 264, 267 S. W. 183; Barnett v. Williams, 101 S. W. 1191, 31 Ky. Law Rep. 255; Clarke v. McDowell's Adm'r, 109 S. W. 887, 33 Ky. Law Rep. 177; Veach v. Smith et al., 107 S. W. 234, 32 Ky. Law Rep. 851; Tucker v. Witherbee, 130 Ky. 269, 113 S. W. 123; Timmons v. Center, 43 S. W. 437, 19 Ky. Law Rep. 1424; Borders v. Allen, 110 S. W. 240, 33 Ky. Law Rep. 194; Brown v. Spradlin, 136 Ky. 703, 125 S. W. 150; Taree v. Spriggs, 149 Ky. 20, 147 S. W. 754; Castillo v. McBeath, 162 Ky. 382, 172 S. W. 669; Hargis v. Hargis, 207 Ky. 366, 269 S. W. 297.

This case is distinguished from Tygret v. Potter & Co., 97 Ky. 54, 29 S. W. 976, 16 Ky. Law Rep. 809, cited by appellee by the surrender of the old notes in that case to Tygret and by the assumption by Tygret of the relation of tenant, by leasing the property from Potter & Co.

Charles v. Thacker, 167 Ky. 835, 181 S. W. 611, is not like this one. Thacker and wife gave possession to Charles and he had held that for six years before suit was begun by Thacker. The old mortgage notes were surrendered to Thacker when he made his deed.

Nor is White v. Nichols, 184 Ky. 335, 211 S. W. 849, like this case. There is nothing to show White owed Nichols a penny previous to the deed by the Whites to Nichols. Nichols paid off the lien on the land and gave White an option to repurchase it on or before January 1, 1910. White did not exercise his option and moved away. He lived seven years, and after his death his widow and children sued.

In the three last cases the surrender of possession showed clearly those transactions were intended to be deeds and the parties then so understood them. A great lawyer once said, "Tell me what parties have done under their contract and I'll tell you what their contract was." Mrs. Hill's heirs were represented by Mr. S. H. Phillips, a kinsman, and he testifies to how Talley managed the farm, and it may fairly be said the evidence shows that the Talleys sowed down, in Korean and Lespedeza, sweet clover, red top, and other meadow and field grasses, some 70 to 90 acres of this farm; cleared off the fields, filled gullies, rebuilt the stable and crib, repaired fences, re-roofed the dwelling, papered the rooms in the dwelling, and repaired the farm fences

in the years 1931, 1932, and 1933—thus improving the land to the extent of about $500. Tenants do not do those things, and let us remember these things were done under the eye of Mr. Phillips who was representing the Hills. He testifies: "It was my suggestion, and they did what I told them in every particular." Landlords do not expect such things of tenants, but creditors do of their debtors. So we conclude the paper in question just on its face tends to show it is a mortgage, and when we look at the circumstances we are convinced it is such. In the preparation of this opinion we have examined scores of cases, foreign and domestic, and have not found one wherein a man had executed a paper like this one, had been allowed to continue in possession without a lease and without rent, wherein the paper was held not to be a mortgage. Eastland cites the cases of Gray v. Prather, 2 Bibb. (5 Ky.) 223, 225, Prince v. Bearden, 1 A. K. Marsh. (8 Ky.) 169, and Kenney v. Marsh, 2 A. K. Marsh. (9 Ky.) 46; but in each instance the grantee had possession. Not only did Talley remain in possession, but his widow and heirs have superseded this judgment and are in possession now. The circumstances of the case are admissible to aid the court to determine what the paper is. See Brown v. Spradlin, 136 Ky. 703, 125 S. W. 150.

### Eastland as a Purchaser.

There is such privity between the bank, Mrs. Hill, and Mrs. Hill's children that the Talleys can assert against any of them any right they could assert against the bank; but what about Eastland? Is he an innocent purchaser, as was Trimble in Brown v. Spradlin, 136 Ky. 703, 125 S. W. 150? No, because Trimble bought in the light of the record which in that case gave no evidence that the conveyance to Brown was other than an outright and absolute deed. The paper on which Spradlin relied was an entirely separate and distinct document. In this case the clause of defeasance was a part of the deed itself.

Eastland knew everything in each deed in this chain of title as fully as if copies of them had been served on him and they had been read to him in the presence of witnesses. Piney Oil & Gas Co. v. Scott, 258 Ky. 51, 54, 79 S. W. (2d) 394. Not only did Eastland know everything in these deeds, but he knew the Talleys were still living there, which put him on inquiry, and he is

charged with everything he would have learned by prudent inquiry, or, as said in Jones on Mortgages (8th Ed.) sec. 417:

> "An absolute conveyance intended as a mortgage will retain its character in the hands of subsequent purchasers with notice of the rights of the parties; and hence, if a purchaser from the original grantee knew the nature of the transaction, or knew of facts sufficient to put him on inquiry, he can not claim to be the absolute owner, but the mortgagor may redeem from him, as well as from the grantee."

Mrs. Eastland is in the same position as her husband; everything said of him applies to her throughout this opinion.

The court erred in not holding this to be a mortgage, and for that this judgment must be reversed for consistent proceedings.