## Hatfield et al. v. Corbin Bldg. Supply Co. et al.

June 6, 1939.

J. J. Tye, Judge.

Hiram H. Owens for appellants.

G. M. Manning, M. A. Gray and Thomas F. Young for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

Elizabeth Hatfield, one of the appellants, owned approximately 18 acres of land abutting on U. S. Highway 25E in the eastern part of the city of Corbin. Some time prior to 1930 the city built a concrete highway along this property. Mrs. Hatfield borrowed money to pay the assessment for this street from the First National Bank of Corbin, one of the appellees, and executed a mortgage on the 18 acre tract and other property to secure this debt. Her debt to the Bank amounted to $6,500 on the 14th of November, 1935, with interest from June 28, 1933.

On that date Mrs. Hatfield deeded the mortgaged property to the Bank for $1 and other valuable consideration, which deed was duly recorded. On the same day the parties entered into the following contract:

"Whereas, Elizabeth Hatfield, is indebted to the First National Bank of Corbin, Kentucky, in the sum of six thousand five hundred ($6,500.00) dollars, and

"Whereas, Elizabeth Hatfield has this day conveyed to the said First National Bank of Corbin in

full satisfaction of the said mortgage and interest, all of the real estate conveyed and described and set forth in the said mortgage.

"Now, in consideration of Elizabeth Hatfield conveying the said real estate to the said First National Bank of Corbin, without requiring it to go to the expense of filing suit to enforce its mortgage lien against said property, the said First National Bank of Corbin agrees that it will contract with a responsible real estate man to handle the sale of the said property, and will authorize him to sell all or any part of the said property for the best price obtainable and that it will pay the real estate dealer who sells the real estate a commission not to exceed ten per cent of the amount received for the said land, or any part thereof, and it is mutually agreed by and between Elizabeth Hatfield and the said Bank that the said Bank is to sell said property whenever it has sold a sufficient amount of the said property to pay its debt, and interest and the expenses connected with the selling and such expenses as it may incur by reason of its repairing and improving said property for the purpose of making it more salable, then it will turn over to Elizabeth Hatfield all of the money it receives from the said property in excess of the above amounts, or if any land is left, reconvey same to Elizabeth Hatfield after the said Bank has been fully paid.

"Elizabeth Hatfield agrees to the foregoing terms, which is part of the consideration for her conveying the property described in the said mortgage to the First National Bank of Corbin. It is also agreed by the parties hereto that any repairs to the property shall not exceed $200.00.

"Elizabeth Hatfield shall have the possession of all of the said property described in the said mortgage and deed to the First National Bank of Corbin, and the income from the said property until said property is sold, then she will give possession of any property sold by the said Bank or its real estate agent within thirty (30) days from the day of sale.

"It is agreed by Elizabeth Hatfield that the said Bank or its authorized real estate agent, shall have the right to enter the said property and make

all necessary repairs and necessary improvements to said property as may be decided upon by the said Bank and may be within the terms of this contract.

"It is agreed that the said Bank and its agent will sell all of the back property first, and that the front property will be held until the last and not sold unless absolutely necessary to be sold in order to pay the said Bank the amount of its mortgage, interest and expenses."

Two pieces of the property were sold in accordance with this contract; one for $1,850 and the other for $400. Only the piece which sold for $400 was a part of the 18 acres in question.

During the latter part of 1936 the Corbin Building Supply Company, another appellee, furnished materials in the amount of $520.07 to Elizabeth Hatfield and her son, Roscoe Hatfield, for the construction and repair of a building on a part of the land in question. On or about January 12, 1937, the Supply Company instituted this suit against Mrs. Hatfield, Roscoe Hatfield and the Bank to collect its debt and enforce a materialman's lien, notice of which it alleged had been filed in the county clerk's office. The record shows, however, that the notice of the lien was not subscribed to by the President of the Supply Company until January 19th. It was recorded in the clerk's office on the following day. No further pleadings were filed by the Supply Company. It has filed no brief herein. During the progress of the trial the Hatfields filed a plea in abatement as to the Supply Company in which they set forth that in order to secure payment of the Supply Company's debt they had assigned certain future rents which "may be due and payable for the use and occupancy of said building," and had given the company the right to collect said rents until the indebtedness was paid. In her answer which had been filed previously, Mrs. Hatfield asserted that she had complied with the rental assignment to the Supply Company and that its suit was prematurely brought.

On March 23rd the Bank filed an answer and cross petition in which it prayed judgment for $6,891 with interest from March 10, 1937, against Elizabeth Hatfield, and also that it be adjudged a lien prior and superior to all other liens against the property and that a sufficient amount of the property be sold to satisfy its lien.

On April 6, 1937, Mrs. Hatfield and the Bank en-

tered into a contract with the E. S. French Realty Company under which French was to conduct an auction sale of the property. He was to bear all of the expenses of the sale and was to sell the back part of the property first. After that part of the property was sold, and in the event that property did not satisfy the Bank's debt, he was to sell a sufficient amount of the property along the highway to accomplish that end. Within due time the sale was had and most of the property was bid in by the Bank. One piece, however, was sold to Sidney Ellison for the sum of $1,715 and the Bank executed a deed to him for that property, which it now asserts it had no authority to make. Ellison appears to have paid the full purchase price to the Bank, and according to the briefs, he is now in possession of the property. Mrs. Hatfield refused to recognize the sales purportedly made at the public auction. Subsequently, French attempted to sell the property to parties other than those who bid at the sale.

In October, 1937, E. S. French filed an intervening petition in the suit originally brought by the Supply Company in which he asked that his petition be treated as an answer and cross petition against Mrs. Hatfield and the Bank. French sought to collect $1,826 as commissions on the alleged sales. This amount included a 10% commission on the $400 sale. He prayed that he be adjudged a lien against the property for his claim, and that the property be sold with the proceeds applying first to the satisfaction of the Bank's claim against the property and then to his claim, and that, in the event the property did not bring an amount sufficient to satisfy the debt of the bank and his claim for commissions, he be given a personal judgment against Mrs. Hatfield and the Bank for the remainder of his claim.

On November 9, 1937, Mrs. Hatfield filed an answer, cross petition and counterclaim. The issues were joined after subsequent pleadings were filed, and upon submission of the cause the trial court, on July 9, 1938, adjudged that the deed executed by Mrs. Hatfield to the Bank on November 14, 1935, and the contract entered into by her and the Bank on that date constituted a mortgage to secure her indebtedness to the Bank. It was further adjudged that the Bank recover of her the sum of $6,915 with interest from November 16, 1937, which sum had been claimed by the Bank in an amended petition; that for the purpose of securing the Bank in

this sum and for the purpose of paying the judgment of French against the Bank in the sum of $1,826 with interest from May 17, 1937, the Bank be given a mortgage lien against the property which had not been sold; that the master commissioner sell a sufficient amount of the property to satisfy the lien against it; that the Supply Company recover of Roscoe Hatfield and Mrs. Hatfield the sum of $520.07 with interest from the first day of November, 1936, subject to a credit of $50 on January 1, 1937; that the Supply Company have a materialman's lien on the real estate in question; and that the lien of the Supply Company is inferior to that of the Bank for the payment of its debt and also the lien of the Bank against the property for the amount adjudged to be owing French by the Bank and Mrs. Hatfield.

It is urged that the judgment of the trial court is erroneous because (1) the Bank agreed under the contract of November 14, 1935, to accept $6,500 in full satisfaction of its debt and interest, and that the Bank had no cause of action on the old note and the old mortgage; (2) the court erred in adjudging that all the 18 acre tract be sold, since part of it had already been disposed of; (3) French was entitled to only 10% commission on the $1,850 and $400 sales; and not more than 15% on the $1,715 sale, if the latter sale be adjudged as coming within the contract with French dated April 6, 1937; (4) no announcement was made that the Bank had by-bidders at the public sale, and the attempted sales were not consummated, nor were any memoranda of sales executed to the by-bidders or to the Bank; and (5) the Supply Company should have been required to look to the rental assignment in satisfaction of its debt.

We can not agree with the appellants' first contention. It is our view that, when the contract entered into on November 14, 1935 between Mrs. Hatfield and the Bank is viewed as a whole, it is obvious that the Bank did not agree to accept $6,500 in full satisfaction of its debt and interest. It is true that the contract sets out that the deed was executed in order to avoid a forced sale, but the Bank also agreed to allow Mrs. Hatfield to remain in possession of the property and that it would sell only a sufficient amount of it to satisfy its debt, interest and expenses as provided in the contract.

The judgment in respect to the Bank must be reversed, however, because the trial court erred in allow-

ing interest on $6,915, the amount claimed due by the bank, from November 16, 1937. The Bank is entitled to collect its debt of $6,500 with interest from June 28, 1933, plus the taxes paid by it on the property and the expenses which it incurred under the contract of November 14, 1935. This amount should be credited with the $1,850 received from the sale of the property to J. B. Ellison, less the 10% commission to the real estate agent; with the sale of the property to John Hatfield for $400 less the 10% commission to the real estate agent; and with the sale of the property to Sidney Ellison for $1,715, less the 15% commission to the real estate agent.

It is true as contended by the Bank that the deed and contract executed by Mrs. Hatfield on November 14, 1935, constituted a mortgage. Watkins v. Wallace, 206 Ky. 264, 267 S. W. 183; Moore v. Williamson's Ex'r, 192 Ky. 790, 234 S. W. 732; Bowen v. Boughner, 189 Ky. 107, 224 S. W. 653. This is true, however, only in so far as these two parties were concerned. There is no showing that Sidney Ellison had knowledge of this arrangement, since only the deed to the Bank was on record. When he took a deed from the Bank for the part of the property which he bought he had every reason to believe that the Bank could convey a good title to him. It is our view that this sale to Sidney Ellison should not be disturbed, and that the trial court erred in including this particular piece of property in the properties which the master commissioner was authorized to sell under the judgment.

While the Bank is contending that it had no right to execute a deed to Sidney Ellison, we gathered the impression from the briefs on both sides that there is no serious objection to letting this sale stand. Ellison was not made a party to any of the proceedings, and it seems to us, in view of all the circumstances heretofore mentioned, that this transaction should be left undisturbed. French should be allowed his commission of 15% on this sale, however, since this piece of property was a part of the property for which he was to receive a commission of 15% under his contract of April 6, 1937, with the Bank and Mrs. Hatfield. It follows, therefore, that the master commissioner should be authorized to sell all of the 18 acre tract, if all of it must be sold to satisfy the Bank's debt, except the part which was sold to John Hatfield for $400 and the part which was sold to Sidney Ellison for $1,715.

We have heretofore indicated the commissions to which French is entitled. We think that the record shows conclusively that Mrs. Hatfield was justified in repudiating all of the sales made at the public auction except that to Sidney Ellison. Our reasons for excepting this sale have been given heretofore. While there is some conflict in the evidence on the point, we think that the record shows that French knew that the Bank was going to have by-bidders at the sale and also that Mrs. Hatfield had no notice of this fact. While Mrs. Hatfield said that she had been instrumental in getting French interested in selling the property, we are impressed from the record and the briefs of the Bank and French, that a very close relationship existed between these two parties. It appears further that French was indebted to the Bank. French vigorously contends in his brief that Mrs. Hatfield was the owner of the property because the deed and contract which she executed on November 14, 1935, constituted a mortgage arrangement between the parties. While it is probable that he had notice of the arrangements between the Bank and Mrs. Hatfield, we do not deem it necessary to discuss that question further herein.

There was definite proof that the back piece of property which was to be sold first was knocked off to a by-bidder for the Bank for a sum less than had been bid by another party. This party, M. L. Noe, after stating that he had withdrawn his bid of $4,000 on the property, said in answer to the question as to why he had canceled it, "Well, they had baffled the thing, delayed quite a bit in completing the sale, I didn't understand it and I asked the auctioneer to cancel my bid." On cross examination he testified:

"Q. 4. It was knocked off to the next bidder below yours? A. That was my impression.

"Q. 5. Do you know whether that was $3975.00? A. Think it was $25.00 under my bid, best I remember.

"Q. 6. Just what caused you to withdraw your bid, Mr. Noe? A. The auctioneer said he wanted to sell. I think it was Mr. French said, 'Wait a minute' and in a minute he repeated the statement, 'I am going to sell it' and Mr. French said, 'Wait a minute.'

"Q. 7. And then you withdrew your bid? A.

It was several minutes and I asked him to cancel my bid.''

This property, the first piece sold, was bought by a by-bidder for the Bank. There was other testimony to the effect that persons present thought that the Bank was buying in the property. There was no announcement that the Bank had by-bidders at the sale. It was said in Melheiser v. Central Trust Company, 237 Ky. 757, 36 S. W. (2d) 377, that it is a well settled custom under the law of this state for the auctioneers to make a memorandum and sign it when property is knocked off. No memoranda of sale were issued to the parties to whom the property was knocked off.

We think it is clear, therefore, that Mrs. Hatfield was justified in repudiating the attempted sales. As indicated above, French tried to sell the property subsequent to the time of the public sale. It is apparent also that the trial judge found that there had been no sale when he directed that the master commissioner sell the property. We do not think that any lien should have been adjudged against the property in favor of French, nor do we think that any judgment should have been rendered against Mrs. Hatfield in his favor for the claimed commissions except on the property purchased by Sidney Ellison. At most, French would be entitled only to a personal judgment against the Bank for any expenses actually incurred by him in preparing for and conducting the purported sale and for reasonable compensation for personal services. Becker v. Crabb, 223 Ky. 549, 4 S. W. (2d) 370.

The appellants are praying an appeal from the judgment in favor of the Supply Company, since the net amount of that judgment was $470.07. It is our view that this appeal should be and it is hereby granted. Judgment should be rendered, however, in favor of the Supply Company for the amount of its debt and interest and it should be given a lien against the property for this amount. This lien to be second to that of the Bank for the amount due it. Even if the judgment in favor of French against Mrs. Hatfield and the Bank had stood, it would have been erroneous to allow French a lien prior to that of the Supply Company, since the contract under which French made his claim was entered into subsequent to the time the Supply Company furnished the materials to the Hatfields, and also subsequent to the time it filed its suit and notice of its lien. It should

be directed that the Supply Company's claim be satisfied from the assignment of rents on the building for which it furnished materials. If, however, it becomes necessary for the master commissioner to sell this particular piece of property on which the repairs were made to satisfy the Bank's claim, the Supply Company should be allowed its claim from whatever balance is left from the proceeds of the sale after the satisfaction of the Bank's judgment.

Wherefore, the judgment is reversed with directions for proceedings consistent with this opinion.