# First Nat. Bank of Jackson v. Reynolds.

Oct. 1, 1940.

S. M. Ward, Judge.

838

Grannis Bach for appellant.

D. G. Boleyn for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

The appellees, Elihu Reynolds and M. F. Reynolds, were indebted to the appellant, First National Bank of Jackson, in the following amounts in January, 1929: $2,900; $1,750; and $525. These indebtednesses were evidenced by notes executed in 1927, and the appellee, Dan B. Turner, was surety on the latter two. All the notes were secured by a mortgage on certain Perry county real estate owned by the Reynoldses. In January, 1929, the bank instituted proceedings in the Perry circuit court to collect the notes and a default judgment was rendered in its favor. Some of the mortgaged property was bought by the bank in April, 1930, and a deed for that property was delivered by the commissioner. This deed appears to have been lost, however, and another deed was made to the bank in September, 1938. Notwithstanding the execution of the deed the bank agreed at, prior, or after the sale to let the Reynoldses have the property back if they would pay the notes. The Reynoldses remained in possession of the land, listed it for taxes and paid taxes thereon until about 1936. Furthermore, payments were made on the indebtedness from time to time. There can be no doubt, therefore, that the deed given the bank in 1930 was treated by the parties as a mortgage. There is ample authority for the conclusion that the deed should be so looked upon. Hatfield v. Corbin Bldg. Supply Co., 279 Ky. 30, 129 S. W.(2d) 1025; Talley v. Eastland, 259 Ky. 241, 82 S. W. (2d) 368; Watkins v. Wallace, 206 Ky. 264, 267 S. W. 183.

This controversy hinges around a transaction between the bank and the debtors in 1935. In that year the bank let the Reynoldses have $1,600 with which they

agreed to and did settle their indebtedness to the closed Hargis bank. The Hargis bank assigned its claims against the Reynoldses to the appellant herein. At this time the bank prepared a statement in which it set forth the amounts owed it by the Reynoldses. In addition to the $1,600 new money, the statement showed $2,900, the original loan, $1,590 interest on that loan from 1927, and $855.10 and $765 which represented the balance of the $1,750 and $525 notes upon which Turner was surety. Notes for these amounts were executed with Turner as surety on the $855.10 and $765 notes, and a mortgage on property other than that covered in the 1927 mortgage was executed by the Reynoldses to secure these new obligations. The old $2,900 note was released by the bank and marked "Paid." However, it appears that the notes upon which Turner was surety remained in the bank's hands, although, as indicated, new notes were executed.

As to the sufficiency of the new mortgage, the president of the bank, who seems to have handled the transactions with the Reynoldses, testified as follows:

"The mortgage that the bank has dated on December 26, 1935, a copy of which has been filed with the plaintiff's deposition, did it include sufficient property to pay the indebtedness set out therein? A. We thought so at the time but it looks like it will not pay it."

The president testified further, however, that the bank did not release its titles or liens to the Perry county land, that the new notes were not accepted in payment of the judgment in the Perry circuit court, and that he did not recall any discussion about releasing the lien at the time the new notes and new mortgage were executed. Elihu Reynolds testified that the notes executed in 1935 were in full satisfaction of the Reynoldses' indebtedness to the bank, and that the bank officials said they were satisfied. As to the disposition of the 1930 judgment, he testified:

"Q. 116. Was there anything said about what disposition would be made of this judgment up here or whether this judgment would be carried out between you all? What was said when you settled up with them? A. I don't believe it was mentioned.

It was just over with and he turned over part of the notes.

"Q. 117. What about the judgment? A. The judgment was settled on.

"Q. 118. You mean it was well understood and agreed that this was settled and over? A. Yes, sir."

The new mortgage recited that it was for the purpose of securing the payment of the new notes heretofore mentioned.

Subsequently, the bank instituted proceedings in the Breathitt circuit court to collect the new notes. The action now before us was instituted by the Reynoldses in the Perry circuit court to have the judgment of 1930 adjudged satisfied and to have cancelled the deed which was given under it. This appeal is being prosecuted from a judgment in their favor.

The whole case boils down to the question of whether or not it was the intention of the parties that the new notes and mortgage executed in 1935 were in satisfaction of the old notes and mortgage and the 1930 judgment upon them. The new notes, of course, included the $1,600 new money. We think there was a novation. While there is conflict in the evidence as to whether the parties so intended, we think the attending circumstances as summarized below support the finding of the chancellor. The deed executed under the 1930 judgment was treated as a mortgage. The statement prepared by the president as to the Reynoldses' indebtedness to the bank disregarded completely the 1930 judgment and brought the Reynoldses' indebtedness up to that date for 1927; the new obligations, in addition to the $1,600 new money, covered the Reynoldses' indebtedness to the bank and interest; the new mortgage on other property recited that it was to secure the payment of the new notes; and the president of the bank testified he thought that the new mortgage included sufficient property to cover the new notes. See the cases of Richards v. Davis' Ass'ee, 7 Ky. Law Rep. 358, 13 Ky. Opin. 746; Barret v. Clarke, 226 Ky. 109, 9 S. W. (2d) 1091.

Wherefore, the judgment is affirmed.