**Pearl E. BOWLING et al., Appellants,**

**v.**

**Elbert DUFF, Appellee.**

Court of Appeals of Kentucky.

Nov. 12, 1954.

Noble, Noble & Noble, C. A. Noble, Sr., Hazard, for appellants.

S. M. Ward, Hazard, for appellee.

CULLEN, Commissioner.

P. E. Bowling brought action against Elbert Duff, seeking a declaration that an instrument by which he had conveyed his residence to Duff was a mortgage rather than a deed, and further seeking to be allowed certain credits against the mortgage indebtedness. The court adjudged that the instrument was an absolute deed, and not a mortgage, and disallowed Bowling's claim for credits. Bowling has appealed.

The transactions between Bowling and Duff were somewhat involved. It appears that prior to June 29, 1950, Bowling was indebted to Duff in a small amount, around $300. Bowling also owed a bank $2,600, which was secured by a mortgage on Bowling's residence, and he owed some $800 to another person. Bowling and Duff entered into some kind of agreement pursuant to which Duff advanced around $1,500 to Bowling, part of which was used to pay off the $800 debt, and Duff further paid the mortgage to the bank. Thereupon, on

June 29, 1950, Bowling executed a deed conveying to Duff his residence, with adjoining lots. The recited consideration was $4,413, which was the total of the sums Duff had advanced to or paid on behalf of Bowling.

Contemporaneously with the execution of the deed, Duff and Bowling executed another instrument, designated a "Contract of Lease," pursuant to which Duff leased the premises to Bowling for a rental of $30 per month, and which contained standard lease clauses. However the instrument further recited that Bowling was "given the right to repurchase or redeem the property * * * within two years * * * by paying back * * * the sum of $4,413.-00, with interest at the rate of 6% per annum;" that any repayment installments must be at least $500 in amount; and that the monthly rentals "shall be paid in any event and shall not be considered as a credit or a payment on the amount to be paid in the redemption of said property."

A few months later, in August 1950, Duff was required, because of some complications arising out of Bowling's affairs at the bank, to pay an additional debt of Bowling's in the amount of $950. Bowling and Duff then executed a third instrument, designated "Option," which made reference to the original "lease" and the advancement of the additional $950, and then recited that the original lease was modified to the extent that "the amount of money to be paid * * * in the repurchase or redemption of the property * * * shall be increased by the amount of $950.00, making the sum of $5,363.00." This instrument further contained the somewhat astonishing recitation that, "In other words, the purchase price paid by the first party (Duff) to the second parties (Bowling), mentioned in the deed of June 29, 1950, has been increased in the amount of $950.00, * * *"

During the period from June 1950 to August 1952, Bowling made a number of payments to Duff, in amounts varying from $25 to $250. Duff applied the payments first to the monthly rental charge of $30, and then applied any balance to the "debt."

Along in November, 1950, Bowling sold three of the lots adjoining his residence, and he and Duff joined in a deed to the purchaser. The price was $1,400, which was paid to Bowling. He retained $100 and paid the remaining $1,300 to Duff, who gave Bowling credit for that amount on his records of the "debt".

After August 1952, Bowling made no more payments to Duff, and in December 1952 Duff served notice upon Bowling to vacate the residence, and commenced a forcible detainer proceeding. Thereupon Bowling brought the action now before us.

Bowling contended in the court below that the deed was a mortgage; that he was entitled to credit against the mortgage indebtedness for the $1,300 paid to Duff from the sale of the three lots; that he was further entitled to a credit of $2,400 by way of money due him from a shoe repair business in which he and Duff had been partners; and that he was also entitled to credit for the "rental" payments he had made to Duff. The court adjudged that the deed was not a mortgage; that Bowling was not entitled to credit for the $1,300 from the sale of the lots because, Bowling not having exercised his option to repurchase, the lots belonged to Duff; that Duff did not owe Bowling any money in connection with the shoe repair business; and that the periodic payments Bowling had made to Duff should be credited as rent.

We are of the opinion that the court erred in not declaring the deed to be a mortgage. Everything about the transaction is indicative of intention to secure a debt. The use of the word "redeem" in the "Lease" and "Option" documents implies the existence of a debt and negatives the idea of an absolute sale. Spears v. Atkins, 284 Ky. 769, 145 S.W. 2d 1064; Talley v. Eastland, 259 Ky. 241, 82 S.W.2d 368. Throughout his testimony, Duff constantly referred to the "debt" and

the crediting of interest and principal on "the grand total." The fact that the $950 paid by Duff in August 1950 was added to the amount Bowling was required to pay to redeem his property shows that the property was being held by Duff as security. As Bowling points out, it would be ridiculous for a purchaser of property to increase the purchase price after the sale had been completed.

■ If there is any doubt as to whether a transaction is a mortgage or a sale, it will be held to be a mortgage. Penington v. Napier, 304 Ky. 666, 201 S.W.2d 738.

Since we hold that the transaction was a mortgage, it follows that Bowling is entitled to credit on the mortgage indebtedness for the $1,300 received from the sale of the lots.

■ The evidence concerning the sum of $2,400 alleged to be due Bowling from the shoe repair business was very unsatisfactory, and we concur in the chancellor's decision that Bowling was not entitled to credit for this sum.

■ There remains the question of whether Bowling is entitled to credit on the mortgage indebtedness for the sums he paid as rent. The general rule is that a mortgagee is chargeable with any rents he collects from the mortgaged real estate. Frey v. Campbell, 3 S.W. 368, 8 Ky.Law Rep. 772; Bowen v. Boughner, 189 Ky. 107, 224 S.W. 653. It would be unconscionable, and smack of usury, to permit the mortgagee to collect rent on the property in addition to six percent interest on the debt. It is our opinion that the rental payments made by Bowling should be credited on the mortgage indebtedness.

The chancellor made a finding as to the total amount of money Bowling had paid to Duff in periodic payments. We concur in that finding.

The judgment is reversed, with directions to enter judgment in conformity with this opinion.