## SAUER *v.* FISCHER.

1. MORTGAGES—MAXIMS.

    Maxim, "Once a mortgage always a mortgage," does not mean that right of redemption cannot be lost except under foreclosure.

2. SAME—WHEN DEED TO BE HELD MORTGAGE.

    Deed in terms conveying title in fee simple is not to be held mortgage unless given to secure payment of debt or loan.

3. SAME—WHEN CONVEYANCE SALE RATHER THAN MORTGAGE.

    If personal liability to pay debt is extinguished by conveyance, and it is optional with grantor to rescue property by payment or relinquish it by nonpayment, it is absolute sale with privilege of repurchase, and not mortgage.

4. SAME—DEED GIVEN AS MORTGAGE MAY BE SUBSEQUENTLY CHANGED TO ABSOLUTE DEED.

    Deed given as mortgage may be changed by subsequent agreement of the parties into absolute deed.

5. SAME—PAROL AGREEMENT THAT WARRANTY DEED IS MORTGAGE MAY BE CANCELED AND DEED BECOME ABSOLUTE.

    When title is passed by warranty deed, and grantor claims parol right of defeasance, he may, by agreement or acts evidencing such purpose or bringing such result, cancel secret agreement and let terms of deed control.

6. SAME—RIGHT OF PAROL DEFEASANCE LOST BY SUBSEQUENT ACTS OF PARTIES.

    Where defendant, conveying land by warranty deed as security in nature of mortgage, executed quitclaim deed to purchaser from his grantee, entered into contract, through his daughter, to purchase the land, which was later canceled and lease with option to purchase executed to daughter, after expiration of which defendant induced plaintiffs to purchase the land in order to give defendant option to purchase, he lost whatever right of defeasance he had by such acts as against plaintiffs, who were good-faith purchasers.

Appeal from Macomb; Reid (Neil E.), J. Submitted April 10, 1929. (Docket No. 62, Calendar No. 34,226.) Decided June 3, 1929.

Bill by Peter J. Sauer and another against Alexander T. Fischer and others to quiet title. From a decree for plaintiffs, defendants appeal. Affirmed.

*Lungerhausen, Weeks, Lungerhausen & Neale,* for plaintiffs.

*Albert McClatchey* and *Harry J. Weber,* for defendants.

WIEST, J. This is a suit to quiet title. Two questions are presented: (1) Did a warranty deed, confessedly security in the nature of a mortgage in the first instance, by subsequent deeds, acts, land contract, options, lease, and dealings with reference to the land, pass the title in fee? (2) If not, did plaintiffs in good faith, and for a valuable consideration, purchase the property from parties having of record title in fee?

The decree in the circuit quieted plaintiffs' title. Several defendants appealed, but it is only necessary to pass upon the rights of Alexander T. Fischer, who claims right of redemption, and insists that plaintiffs are only mortgagees, notwithstanding the matters we will now mention.

Mr. Fischer owned the land, was indebted to Anthony Lauhoff, and May 10, 1909, he and his wife executed and delivered to Lauhoff and wife a warranty deed to the premises. This instrument was recorded as a deed, although conceded to have been given as security in the nature of a mortgage. Mr. Fischer did not pay his debt to Lauhoff, and, April 6, 1914, Lauhoff and wife conveyed the land to Fenton

B. Nebel and wife by warranty deed. This convey-
ance was also recorded as a deed, although the
Nebels knew that the Lauhoff deed from Fischer was
in the nature of a mortgage. The same date Mr.
and Mrs. Fischer gave Mr. and Mrs. Nebel a quit-
claim deed. The deed from the Lauhoffs operated
to convey the mortgage interest and the quitclaim
deed from the Fischers to the Nebels was intended
in aid of the security. We now come to matters re-
quiring somewhat extended notice, as it is claimed
they operated to vest the legal title in the Nebels.

July 14, 1914, Mr. Nebel and his wife entered into
a land contract with Eleanor Fischer, daughter of
Alexander, for the sale to Eleanor of the premises
upon payment of $8,131, on or before two years from
that date. In that transaction Mr. Fischer was the
real party interested. September 30, 1919, that land
contract was assigned by Eleanor to the Nebels, and
thereby canceled; nothing having been paid thereon.
The same day Mr. Nebel, as lessor, and Eleanor Jef-
fries (nee Fischer), as lessee, executed a lease of
the premises to run from October 1, 1919, to Oc-
tober 1, 1920. September 17, 1919, Nebel and wife
signed an option giving Eleanor Jeffries the right,
until October 1, 1920, to purchase the premises upon
payment of $11,400, and the taxes due after Jan-
uary, 1919. The right, under this option, was not
exercised. Mr. Fischer maneuvered all these mat-
ters, and he, instead of his daughter, was the inter-
ested party. The Nebels wanted their money, and
Mr. Fischer was active in inducing plaintiffs herein
to purchase the land from the Nebels and give him
an option to purchase. Mr. and Mrs. Sauer decided
to purchase, and September 17, 1923, Mr. and Mrs.
Nebel, by warranty deed, conveyed the land to Mr.
and Mrs. Sauer, receiving therefor $20,000 in cash
and a mortgage back for $10,000, which mortgage

was later paid. The deed and mortgage were recorded. Mr. Fischer was anxious to have the deal consummated, and participated in bringing about the sale and knew the price paid. October 25, 1923, Mr. Fischer obtained from Mr. and Mrs. Sauer an option allowing him to purchase the land, and a contiguous six and one-half acre parcel, for the sum of $47,500, with right to renewal of the option for another year upon increasing the price $6,000, and like right to renew for one more year. This option was upon the consideration that Mr. Fischer pay seven per cent. interest on the option price and also pay the taxes. Mr. Fischer, while anxious to obtain the so-called option, was careful not to sign it and merge it into a contract to purchase. He did not pay the interest or taxes, nor take a renewal. December 15, 1925, Mr. and Mrs. Sauer, by registered mail, sent Mr. Fischer notice of forfeiture and cancellation of the option.

Mr. Fischer now invokes the maxim, "Once a mortgage, always a mortgage." That maxim, however, does not mean that a right of redemption cannot be lost except under foreclosure. Plaintiffs assert that they purchased the title in good faith and for a valuable consideration, without knowledge of any claim of a mortgage; that Mr. Fischer made no such claim while inducing them to make the purchase from the Nebels, and, in any event, the deed from Mr. Fischer to Lauhoff, if in the nature of a mortgage, was later changed, by subsequent deeds and the dealings we have mentioned, into an absolute title. In reply to plaintiffs' claim of good faith, Mr. Fischer points to the testimony of Herman A. Miller, who examined the title for plaintiffs.

"*Q.* Did you know anything about Mr. Nebel's title being that of mortgagee or vendor in a land contract?

"*A.* Well, I knew how he got it in the first place, yes, sir."

We get little help from this double question and answer. What did the witness know about the title at the time plaintiffs purchased? We must be informed more definitely before we can charge plaintiffs with his knowledge. When plaintiffs purchased from the Nebels, Mr. Fischer was present, had urged the purchase, knew that plaintiffs paid $30,000 for the land, made no claim that the Nebels held as mortgagees, and that he had right of redemption, but led plaintiffs to believe they were getting title in fee simple and could give him an option to purchase the land.

While it is conceded that the Lauhoff and Nebel deeds were, in the first instance, held as security in the nature of a mortgage, we very much question the correctness thereof. Mr. Fischer at no time obligated himself to pay anything. A deed, in terms conveying a title in fee simple, is not to be held a mortgage, unless given to secure payment of a debt or loan. If personal liability to pay the debt is extinguished and it is optional with the grantor to rescue the property by payment, or relinquish it by nonpayment, it is an absolute sale with privilege of repurchase, and not a mortgage. See *Blumberg* v. *Beekman,* 121 Mich. 647; *Gogarn* v. *Connors,* 188 Mich. 161. We will, however, consider the issues as presented by the briefs. It is well established that a deed, given as a mortgage, may be changed by subsequent agreement of the parties into an absolute deed. *Brennan* v. *Finn,* 217 Mich. 584. Title may not be passed by estoppel, it is true, but when passed by warranty deed and the grantor claims parol right of defeasance he may, by agreement or acts evidencing such purpose or bringing such re-

sult, cancel the secret agreement and let the terms of the deed control.

We quote the following from *Falis* v. *Conway Mutual Fire Ins. Co.,* 7 Allen (Mass.), 46:

"The first deed and bond unquestionably constituted a mortgage; and the plaintiff now contends that this character of the estate was not changed by the subsequent transactions, and that he held an equity of redemption when he answered that he owned the property. But we cannot so regard it. The bond of defeasance, the only contract made with him at the time when he conveyed the land, had been surrendered, and by the agreement of the parties had become inoperative and void. The new bonds given in succession were in every essential particular new and independent contracts; they were different in amount, upon a consideration partly new, and to be performed at a different time. They were therefore merely personal contracts; and not being made at the same time with the conveyance of the land, or provided for in any agreement made at that time, did not create any estate in the land. The plaintiff had surrendered and abandoned the title which he held as mortgagor, and made a contract to purchase the land upon new conditions, and for a new consideration."

We quote, with approval and as applicable, the following from *Maxfield* v. *Patchen,* 29 Ill. 39:

"If this was a mortgage, it was from circumstances outside of, and independent of, the written agreement. * * * Even if this was in its inception a mortgage, the evidence that appellant had notice of that fact when he purchased, is not sufficient. * * *

"But conceding that appellant was fully aware of all the circumstances of the case, from the time the land was purchased of the government up to the

time of his own purchase, did he acquire the title, subject to be defeated by appellee's claim?  *  *  *
We think the evidence is abundant to show, that appellee had abandoned the contract. It is true, he did not in terms say so, but all of his acts subsequent to the maturity of his notes seem to unmistakably indicate such a design. And had the land not been improved, or had it not appreciated in value, the presumption, from his previous conduct, is, that he would never have asserted this claim. To permit him to do so, would be to enable him to perpetrate a fraud upon appellant. If he purchased without notice, he must be protected. If, with full notice of all the circumstances, he was invited by the acts of appellee to believe that he had abandoned his claim, it would be inequitable and unjust to permit him to recover the premises, with the improvements and enhanced value of the land. Appellee has been guilty of laches, has stood by and failed to assert his right when it would have injured no person. He did no act, or even claim the right to enforce the contract, when it would have produced no injury. The right to treat this contract as a security for a loan, being a verbal secret understanding between the parties, not appearing in the written agreement, may be shown to have been voluntarily abandoned, altered or rescinded by the agreement of the parties. If it appeared in the written agreement, then a regular foreclosure, a release or satisfaction would be necessary. As between the parties themselves, the proof of abandonment or a rescission might be required to be more rigid than where the rights of third parties had intervened.''

But defendant Fischer appeals to the maxim, ''Once a mortgage, always a mortgage.'' The distinction between the maxim, ''Once a mortgage, always a mortgage,'' and surrender of a right of defeasance, was well pointed out by Chief Justice Shaw in *Trull* v. *Skinner,* 17 Pick. (Mass.) 213:

"The first question is, whether this last agreement, surrendering and canceling the instrument of defeasance, was an extinguishment of the equity of redemption, as between the parties, and against the creditors of the mortgagor. The court are of opinion, that where an absolute deed is given, accompanied by a simultaneous instrument, operating by way of defeasance, and afterwards the parties, by fair mutual stipulations, agree that the defeasance shall be surrendered and canceled, with an intent to vest the estate unconditionally in the grantee, by force of the first deed, by such surrender and cancellation the estate becomes absolute in the mortgagee. The original conveyance stands unaffected in form and legal effect; it conveys an estate in fee; the only party who could even claim a right to deny it that operation, by engrafting a condition upon it, has voluntarily surrendered the only legal evidence, by which that claim could be supported, and is thereby estopped from setting it up. Such cancellation does not operate by way of transfer, nor strictly speaking by way of release working upon the estate, but rather as an estoppel arising from the voluntary surrender of the legal evidence, by which alone the claim could be supported."

We have quoted the holdings where written defeasances were involved, and it is clear that the rule applied in such cases is equally applicable to a case involving a claimed parol right of defeasance.

If Mr. Fischer ever had right of defeasance, he lost the same by his own acts, and the contract, lease, options, and course of dealings wholly negativing rights of a mortgagor.

For such reason, and because plaintiffs were good-faith purchasers, the decree in the circuit is affirmed, with costs against defendant Alexander T. Fischer.

NORTH, C. J., and FEAD, FELLOWS, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred.