### Frazier v. Frazier.

Jan. 26, 1940.

R. Monroe Fields, Judge.

Stephen Combs, Jr., for appellant.

Harry L. Moore for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Reversing.

On October 28, 1937, the appellant, James H. Frazier, a man 86 years of age, executed and delivered to his brother, the appellee, S. T. Frazier, a deed conveying property on the public square in Whitesburg consisting of a filling station and residence which a preponderance of the evidence shows to be of the value of not less than $15,000. In April, 1938, this action was filed by appellant against appellee seeking to have the deed declared to be a mortgage. The trial court denied the relief sought and dismissed the petition. This appeal is prosecuted from that judgment.

On October 26, 1937, two days before the execution of the deed, appellant's wife obtained a judgment for divorce against him, the judgment awarding her alimony of $8,000 and an attorney's fee of $500. At the time of the rendition of that judgment appellant was indebted to the Bank of Whitesburg in the sum of $4,500 and, while he was the owner of real estate valued at more than $50,000, he had no cash on hand and it was necessary for him to borrow the money to pay off the judgment. He had practically completed arrangements to

sell the filling station which occupied one corner of the property in controversy, for $8,000, for this purpose, but was advised by the appellee not to do so and the appellee agreed to help him raise the money. Application was made to the bank for a loan to appellant but on account of his age and physical condition and the fact that he was already indebted to the bank in the sum of $4,500, the bank did not desire to make the loan but agreed to make it to the appellee. Thereupon two notes were executed to the bank by appellee, with appellant as surety, one for $4,500 and the other for $4,000. The proceeds of these notes were used to pay off the $8,500 judgment. This loan was procured on October 30, two days after the execution of the deed. Appellant and his wife re-married on December 7.

On November 8, 1937, appellant sold a piece of property for $2,300 and this sum, together with $200 added, was paid on the $4,500 note executed by the parties to the bank. On December 29 he sold another piece of property for $1,700 and this sum was paid on the same note leaving a balance thereon of $300. In February, 1938, he sold another piece of property for $7,000 and out of this paid off his original indebtedness of $4,500 to the bank. On December 31 the appellee, without knowledge or agreement on appellant's part, satisfied the $300 balance on the $4,500 note and the remaining $4,000 note executed by him and appellant to the bank by executing a renewal note for $4,300 with J. F. Frazier, an illegitimate son of appellant, and another as surety thereon.

Appellant, during the progress of the litigation with his wife, stayed at the home of appellee but after the payment of the judgment to her she moved out of appellant's home, which is a part of the property in controversy, and thereafter, up to the time of his re-marriage, appellant stayed at least a part of the time in his own home, the other part being spent in appellee's home— he continued to reside in the property at the time of the trial of this action. Appellant also continued to receive rent on the filing station up to the first of January, following the deed. It will thus be seen there was no delivery of possession of the property to appellee although in the latter part of December appellee notified the lessee of the filling station that he had purchased the property and thereafter at his demand the lessee paid him the

rent thereon, which was $100 per month. At the time appellee testified, he had collected rent amounting to $581.06 and $500 of this had been paid on the renewal note executed by him to the bank.

The testimony of appellant is vague and uncertain and he nowhere makes the direct statement that the deed to appellee was intended as a mortgage. As a matter of fact, it is apparent from his testimony that he had but little mind and very imperfect recollection about the whole transaction. (Since the filing of this appeal a committee has been appointed for him and the appeal is now being prosecuted by his committee.) He was very insistent, however, that he did not intend to make a sale of his property to appellee. He says that his intention was never to part with his home as long as he lived. He testifies that there was some talk between him and appellee with reference to placing his home in appellee's hands ''for protection'' but that no discussion ever took place between them about selling the place. He says that at one time appellee wanted him to execute him a deed for the property but that he told him that he could not afford to deed away his homeplace and that appellee answered ''I will deed it back to you.''

The deed in controversy was prepared by a deputy clerk at the instance of appellee. This deputy clerk took the deed to appellee's store where it was signed by appellant. Appellant thought the deed was signed in the clerk's office. The deputy clerk states that appellant at the time the deed was signed stated that he did not like the way it was drawn; that appellee said to him at that time ''If you want the money, go ahead and sign.'' J. F. Frazier, appellant's illegitimate son, who claims to have been present, says that appellant by this language meant that the deed should have given him the privilege of residing in the house as long as he lived and that he and appellee assured the appellant that he could do so and there would be no trouble about that. We are dubious as to this interpretation.

Appellee states that the deed was intended by appellant to be an absolute deed and not a mortgage; that when the two notes were executed by him and appellant to the bank the appellant was to pay the $4,500 note himself and appellee was to pay the $4,000 note; that the $4,000 note and past services rendered by him to appel-

lant constituted the consideration for the conveyance. He says that appellant had told him sometime before the execution of the deed that he was very grateful for the services rendered to him by appellee and wanted him to have his homeplace so that it would always be known as the Frazier home. He says appellant stated, ''If you will pay me $4000.00 for it, I will make you a deed and let the balance go on what I owe you and what I want to give you.'' These past services mentioned by appellee were largely rendered some 15 to 20 years ago. Appellant's illegitimate son and members of appellee's family testify that after the execution of the deed the appellant told them that he had deeded the property to appellee and wanted him to have it and wanted it to continue to be known as the Frazier homeplace.

There is no doubt that a deed absolute on its face may be shown by parol or other testimony to have been intended as a mortgage. The courts will consider all the facts and circumstances and if it appears that the conveyance was intended as a security for a debt it will be adjudged a mortgage. When a doubt exists as to whether the writing is a deed or mortgage, that doubt will be resolved in favor of the debtor. Miracle v. Stone, 190 Ky. 610, 227 S. W. 1011; Charles et al. v. Thacker et al., 167 Ky. 835, 181 S. W. 611. Indeed, the rule is not disputed by appellee. He contends merely that the evidence is not sufficient to establish that the deed in controversy was intended as a mortgage.

While as we pointed out above, the appellant's testimony is not direct and certain that the deed was intended as a mortgage, we have little doubt after a consideration of all the facts and circumstances that it was so intended. The deed was practically contemporaneous with the execution of the notes to the bank and it is singular indeed that at this particular time the appellant should choose to convey to appellee property worth not less than $15,000 for $4,000 and past services, especially in view of the fact that he had practically completed arrangements to sell the filling station alone for $8,000, an amount almost sufficient to pay off the judgment against him. Another significant circumstance is that after the deed was executed appellant started selling property to pay off the notes at the bank. He actually applied $4,200 of the proceeds of property sold to pay-

ment of the notes and very probably intended to pay off the second note of $4,000 when he sold the piece of property for $7,0u0 in February. At the time of making this last sale he did not know that appellee had taken up the $4,000 note by a renewal. It appears to us that the renewal of the $4,000 note by appellee, in which was included the balance of $300 due on the other note for which appellee was obligated only as surety, was very probably effected for the purpose of enabling him to take the position now taken by him that the consideration for the conveyance was the payment by him of the $4,000 note. It looks as if he was anxious to effect the renewal with this purpose in view because appellant was rapidly paying off the indebtedness. If it was all paid off by appellant, appellee would have had nothing plausible to rely on to establish the payment of a valuable consideration by him. He could then only have claimed that the deed was executed as a gift and in consideration of past services.

It is urged that this action would never have been filed if appellant and his divorced wife had not been remarried—cross examination of appellant along this line and evidence as to a statement made by appellant's wife to him indicates that there is a degree of plausibility in this contention. We are doubtful that appellant had sufficient mentality and comprehension of his affairs to have instituted the action without some moving spirit behind him. But whether the appellant or his wife was responsible for the institution of the action has no real bearing on the merits of the case.

The judgment of the chancellor finding that the deed was not intended as a mortgage, is, of course entitled to some weight and if there were merely a doubt in our minds as to the correctness of his finding, it would be our duty to follow it. However, after a careful consideration of the testimony, the mere substance of which we have detailed above, we have little doubt that the deed was intended merely as a mortgage to secure the appellee against any loss he might sustain by reason of signing the two notes at the bank. All the facts and circumstances appear to us unerringly to point in that direction. Having reached this conclusion it is incumbent on us to hold that the chancellor erroneously decided this issue of fact.

The appellee is entitlea to a lien to secure him against any loss by reason of signing appellant's notes, and this lien is applicable to the renewal note of $4,300 executed by him to the bank. As it appears that he has been receiving the rent on the filling station, it will be necessary for the trial court to determine how much rent he has received and apply this sum as a credit on that note. He will be entitled to a lien for the balance.

The judgment is reversed, with directions for further proceedings in conformity with this opinion.