## McManus' Adm'x et al. v. Kirk et al.

February 17, 1948.

W. B. Ardery, Judge.

J. C. McKnight and Leslie W. Morris for appellants.

Bradley & Bradley, Stoll, Muir, Townsend, Park & Mohney for appellees.

OPINION OF THE COURT BY JUDGE KNIGHT—Affirming.

This is a suit by appellants against appellees seeking to have set aside a deed executed by appellants to appellees on March 24, 1941, and to have it adjudged that said deed, absolute on its face, is only a mortgage for the security of certain indebtedness. The facts in the case are these:

Ovid McManus, his sister, Molly McManus, and their sister, Lida Lucas, aged respectively 73, 81 and 70 at the time of this transaction, were joint owners in fee simple of a tract of land containing approximately 116 acres near White Sulphur on the Iron Works Pike in Scott County, Kentucky, and fully described in the petition. Ovid and Molly, both unmarried, had lived on the farm together for many years while their sister, Lida Lucas, was a widow and lived in Lexington. In 1934, the three joint owners procured a loan from the Federal Land Bank and the Land Bank Commissioner totaling $6,000.00 secured by a mortgage on the above land. The owners defaulted in the payments on this loan and in September 1940, suit was filed by the mortgagees to foreclose their mortgage. This suit went to judgment in February 1941, and the sale of the property was ordered held at the court house door on March 24, 1941. All efforts by the owners to sell the property privately and to pay off the mortgage and prevent a sale were ineffectual. When the day of the forced sale arrived, Mrs. Lucas, went from Lexington to Georgetown where the three owners met to see if anything could be done to prevent the sale and, if possible, to salvage something from the property. Mr. McManus had long known Mr. T. H. Kirk, one of the appellees herein, by reason of dealings he had had with him as a tobacco man and believed he could get help from him. In response to a telephone call from Mr. McManus, Mr.

Kirk drove from Lexington to Georgetown accompanied by his attorney, Mr. Mohney. All parties assembled at the office of Bradley & Bradley who, as attorneys for the Federal Land Bank, had filed the foreclosure suit. As the result of an agreement reached at that conference, Mr. Kirk turned over to Bradley & Bradley his check payable to the Federal Land Bank for $6,745.31, the total amount of the debt due as of that date, and in addition paid the costs of the suit. Simultaneously therewith, the three owners of the property, McManus and his sisters, executed a deed conveying a fee simple title to Margaret D. Kirk, wife of T. H. Kirk, the consideration shown being $1.00 and other good and valued considerations. The foreclosure suit was dismissed.

Whether this deed, absolute on its face, was intended to be only a mortgage to secure money advanced to pay off the Federal Land Bank, as contended by appellants, or whether it was an outright deed allowing McManus to use the property during the remainder of his life, as contended by the appellees, is the sole question for decision in this case.

## Plaintiff's Proof

Ovid McManus died in September 1946. The older sister, Molly, was over 86 years of age, bedridden, and was unable to testify. The burden of sustaining appellant's contention, therefore, was largely thrown on the remaining sister, Mrs. Lucas. Her testimony was in substance that on the date the sale was to be made, she went to the office of Bradley & Bradley in Georgetown where she and her sister signed the paper which she thought was a mortgage instead of a deed; that it was not read or explained to her or her sister; that she would not have signed the paper had she known it was a deed; that she returned home the same day and three or four days later, she saw an item in the paper about the deed to Mrs. Kirk; that she called Mr. V. A. Bradley, Jr. by telephone and was told by him that it was the same loan she had signed at the bank and that at any time Mr. McManus was able to pay off the debt, he could do so and that the place was his; that after the deed to Mr. Kirk, her brother and sister continued to live on the farm, pay taxes thereon and receive the in-

come therefrom. On cross examination, she admitted that when the roof on the house became leaky several years after the deed to Kirk, she called on Kirk to have the roof repaired which he did at his expense; that she had never paid any interest to Kirk on what she thought was the loan; that she had never said anything to him about her owning any interest in the property until after her brother's death in 1946, at which time he told her the place was his because it had been deeded to him five or six years ago and she filed this suit shortly thereafter.

F. W. McMillan, a real estate man, testified that the property was on a good road, in a good neighborhood, a mile from a store, church and school, and in his opinion was worth about $135.00 to $150.00 per acre in March 1941, and had a market value of $200.00 an acre in September 1946. T. J. Camp, who lived about a mile and a half from the McManus farm, testified that in his opinion the farm in question was worth from $160.00 to $170.00 per acre in 1941, and from $250.00 to $260.00 per acre in 1946. Judge J. D. Offutt, a real estate man and auctioneer, testified that he was familiar with the property in question and in his opinion it was worth about $125.00 in 1941, and in 1946, a farm adjacent to this property sold for $240.00 an acre. By avowal, after objection was made, Judge Offutt said Ovid McManus told him in April 1941 that he had borrowed enough money from Theodore Kirk to pay off the Federal Land Bank and that he could pay it back any time he got ready.

## Defendant's Proof

By the testimony of Theodore H. Kirk, appellee, part of it by avowal, after objection was made, and from the testimony of Gayle Mohney, attorney who handled the transaction for Mr. Kirk, and the testimony of Victor A. Bradley, Jr., attorney for the Federal Land Bank, and present at the conference at which the transaction between Kirk and McManus was completed, and of the testimony of Dulaney Wilson, a great-nephew of Ovid McManus, and of his wife, Mrs. Dulaney Wilson, and of Ben Wilson, a nephew by marriage of Ovid McManus, it was established that Mr. Kirk went to Georgetown on the day the judicial sale was to take

610

place, at the request of Mr. McManus; that in the presence of Mrs. Lucas and Miss Molly McManus, Ovid McManus asked Kirk to take a deed to the farm and let him live there as long as he lived; that at a conference in the office of Bradley & Bradley at Georgetown at which Ovid McManus, Mrs. Lucas, Miss Molly McManus, Mr. Kirk, Mr. Mohney, and Messrs. Bradley were present, it was agreed and arranged that Mr. Kirk pay off the loan to the Federal Land Bank and the property would be deeded to him and that Mr. McManus was to live on the property and receive the proceeds therefrom as long as he lived; that Kirk never received any proceeds from the farm during the time McManus was living; that at one time Kirk spent $750.00 for a new roof on the house at the request of Mrs. Lucas; that Kirk paid the money for the taxes even though it continued to be assessed in the name of the McManus heirs; that the only purpose of Kirk's taking the deed was to help out Mr. McManus; that Kirk had no notice that anybody considered it other than a deed until this suit was filed; that during all the conference, there was no mention made of a loan to McManus or that the deed was understood to be a mortgage, and that the only arrangement was that Mr. Kirk was to pay off the Federal Land Bank debt, pay the cost of the suit, take deed to the property, McManus to receive the income therefrom during his life; that there was no effort to conceal anything about the transaction but that the proposition was made to Mr. Kirk by Mr. McManus and carried out by Mr. Kirk; that at the conference, Mr. McManus, Mrs. Lucas and Miss Molly McManus all seemed to be highly pleased that they had made arrangements whereby Mr. McManus would have a place to live during his lifetime. Mr. Victor Bradley, Jr., in his testimony, flatly denied the telephone conversation which Mrs. Lucas claims to have had with him in which she claims he said the deed was nothing but a mortgage and that it could be paid off at any time they wanted to. There was testimony that the farm was in poor condition in 1941, badly run down with poor fences, barn in bad shape, house in need of repairs, the barn out of plumb and generally in bad condition. Mr. Shropshire, a real estate man, testified that in his opinion in March 1941, the farm was worth about $75.00 an acre.

## Findings of the Lower Court

After hearing all of the testimony of which the above resume touches the highlights, the court gave the following opinion:

"The overwhelming weight of the proof in this case shows that the instrument in question was a deed and that it was intended to be a deed by the grantors.

"The Court has no doubt of the correctness of this conclusion, drawn from all the facts and circumstances, as well as the weight of the proof, which fully bears out the conclusion itself.

"The petition should be dismissed."

From a judgment based upon the above opinion dismissing the petition, appellants prosecute this appeal.

## The Applicable Law

We have held many times, and it is the well settled law in this and other jurisdictions, that a deed, absolute on its face, may be shown by parol testimony and by the facts and circumstances surrounding the transaction, that it was given merely as security for a debt and was intended to be a mortgage. The determination in each case rests on the facts developed in the particular case. Precedents are of little value unless the facts are quite similar, a situation seldom found in this character of case. For this reason, it would be of little value to analyze the many cases in which the question has been considered by this court. That was well done in the case of Talley v. Eastland, 259 Ky. 241, 82 S. W. 2d 368, where many cases from this and other jurisdictions were collated and many annotations listed and referred to. Since that decision, other cases involving this question and decided by this court have been Spicer v. Elmore, 292 Ky. 144, 166 S. W. 2d 276; Gish v. Terrell, 266 Ky. 424, 99 S. W. 2d 168; Spears et al. v. Atkins, 284 Ky. 769, 145 S. W. 2d 1064; Young v. McGraw, 269 Ky. 736, 108 S. W. 2d 712, and Frazier v. Frazier, 282 Ky. 405, 138 S. W. 2d 506.

The case of Schuster v. Caldwell, 280 Ky. 802, 134 S. W. 2d 624, 626, is more nearly like the case at bar than any of the others which we have examined. There,

as here, Schuster owned a small tract of land which was mortgaged to the Federal Land Bank. He defaulted in his payments and the bank threatened foreclosure. At Schuster's request, Caldwell paid off the amount of the debt and Schuster thereupon executed to Caldwell a deed to the land. Schuster remained in possession of the land and used it apparently as his own for more than a year at which time a dispute developed between the parties in regard to certain repairs. Suit was brought to have the deed declared a mortgage and the evidence thereon was conflicting. The chancellor held that the deed was what it purported to be and dismissed Schuster's petition seeking to have the deed declared a mortgage. In affirming that decision, this court said:

"It is thus seen from the above resume of the evidence that it is very conflicting, and that reasonably prudent minded people might differ as to the truth of it. It is the established rule that a deed regular on its face, will not be adjudged a mortgage in the absence of clear and satisfactory proof showing that the instrument was intended to be a mortgage. Stokeley et al. v. Flanders, Ky., 128 S. W. 608; Gish v. Terrell, 266 Ky. 424, 99 S. W. 2d 168; 41 C. J., page 356, Section 124. * * *

"In view of the rule that this court will not reverse a chancellor on the finding of fact when the evidence is such that reasonably prudent minded persons might differ or draw different conclusions as to the truth of it, and, that the courts will not adjudge a deed regular on its face, to be a mortgage, unless the evidence is clear and convincing, we find ourselves unable to hold that the chancellor erred in his finding of fact and conclusions reached thereon."

### Conclusion

We have carefully read all the evidence in this case and have considered all of the inferences and implications to be drawn therefrom and surrounding circumstances of the parties and from this examination, we are convinced that the chancellor reached the correct decision and that the judgment of the lower court should be affirmed.

Judgment affirmed.