## Newsom et al. v. Greer.

January 12, 1951.

Edward L. Allen, Judge.

P. K. Damron, P. B. Stratton, E. D. Stephenson and Henry O. Damron for appellants.

J. E. Childers for appellee.

STANLEY, COMMISSIONER—Reversing.

This is a suit to have a deed, absolute on its face, declared to be a mortgage or mere security for the repayment of a debt. The circuit court found that such was the intention of the parties but the grantors were estopped by their subsequent acts from the right of having it declared to be a mortgage. The grantors or mortgagors question the second conclusion. The grantee or mortgagee sustains that but alternatively questions the primary conclusion.

By inheritance and purchase of the interest of other heirs, Sterling Newsom had title to an 8/9th interest and Freeman Newsom to a 1/9th interest in a 35 acre tract on which was their home where they had been born and had lived practically continuously all their lives. Sterling was unmarried and lived with his brother, Freeman, who had a wife and several children. The minerals had been previously conveyed. On December 31, 1935, Freeman and Sterling had executed an absolute deed to the property to Robert Newsom to secure a debt of $400 owed by Freeman, with the verbal agreement that if the debt was not paid in twelve months, Robert would pay them $1,000 or $1,100 and the deed would become absolute. Sterling owed his brother-in-law, Andy Greer, $150, which was secured by a mortgage on his interest in the land. As the maturity of the Robert Newsom debt was approaching, the parties were much distressed over their inability to pay it and redeem their property. The only testimony of the preceding negotia-

tions or transactions is that of Freeman's wife that Greer had offered to help them out and of Greer that Freeman told him he had to have the money for Rob Newsom by midnight and asked him to pay it off, and the next morning they traded. On the night of December 31, 1936, Greer brought a deed to the property to the house to be executed. It recites that for the consideration of $550 Freeman and Sterling Newsom conveyed the property absolutely to Greer. He gave Freeman $400 and regarded Sterling's $150 debt to him as being satisfied. Freeman, his wife and Sterling relate the conversations and circumstances and testify positively that this deed was intended merely to secure the debt. Senator Charles F. Trivette came with Greer and took the acknowledgements as a Notary Public. He testified that "from the talk of these parties there that night. * * * as I understood it, Andy was loaning Freeman some money as Rob Newsom was pushing Freeman, and Freeman had to have the money by midnight. Andy wanted to be safe and wanted a general warranty deed that he could hold as security on the loan; that if within a reasonable length of time if Freeman did not pay it off, it would be a bona fide deed."

The Newsoms continued to live on the property as before; improved it; listed it for taxation for two years; sold a right-of-way for an electric power line (before Greer had the instrument recorded); sold twenty loads of mine props with Greer's knowledge, and two or three loads of such timber to Greer himself. Greer does not deny the former but denies he bought any props. Bennie Johnson (who lives at Fruit Jar Junction, Kentucky) was present when the instrument was signed, but he was not asked about the conversation or the transaction. However, the next morning he tried to buy the property from the Newsoms for a third party. Sterling Newsom testified that he had suggested to Greer at different times that they divide the land and satisfy the debt, but he would not agree to it, and that he had "lots of times" said he would let them have it back. This was not denied by Greer. They have paid in different sums from time to time a total of around $425, according to Greer. The value of the property at the time is variously estimated to have been as much as $2,500. The defendant, who has been trading in property in the community for several years, fixed the value of $700. The property has perhaps

doubled in value because of the development of coal mines nearby.

The defendant testified he had never agreed that the deed should be only security for a loan and stated that the money paid him by his brothers-in-law was for rent. He paid taxes on the property after the first two or three years, during which the Newsoms had paid them. At the time the deed was made, the rental value was about $5.00 a month. They paid the rent regularly up to 1946. At the end of that year, ten years afterward, Greer gave the Newsoms notice to vacate the premises and this suit followed.

Millis Newsom testified he was present when the deed was signed but did not hear anything said about it being a mortgage or that the Newsoms had a right to redeem the land. He added, however, that he was not interested and that it "could have been said and he wouldn't have heard it." Victor Greer, a son of the defendant, states that he was there and nothing to that effect was said by anybody.

It was once held in this state that parol evidence was admissible to establish a deed to be a mortgage only upon the pleaded ground of fraud or mistake. But it is now settled that such proof is acceptable without such a plea. It is a matter of doing equity to look through the forms in which the contrivance of the lender has enveloped the transaction and to determine and enforce the actual intention of the parties and adjudge the instrument to be a mortgage regardless of its form if the intention was only to secure the payment of a debt. Coleman v. Coleman, 306 Ky. 6, 206 S. W. 2d 57. Our statements with respect to the degree of the burden upon the party claiming an instrument to be only security for a debt are not harmonious. It has been said in some opinions that when there is doubt, it will be resolved in favor of the debtor and the instrument construed to be a mortgage. Coleman v. Coleman, supra, is the latest of such statements. But in some of them the distinction between construing a writing and regarding the evidence as reforming it or establishing a trust seems to have been overlooked. On the contrary, in a more consistent line of cases, we have said that to overcome the presumption arising from the form of the instrument as a deed, the evidence must be clear and convincing. Stokeley v. Flan-

ders, Ky., 128 S. W. 608; Gish v. Terrell, 266 Ky. 424, 99 S. W. 2d 168; Britton v. Marcum, 278 Ky. 138, 128 S. W. 2d 553; Austin v. Napier, 292 Ky. 95, 166 S. W. 2d 49; McManus' Administratrix v. Kirk, 306 Ky. 606, 208 S. W. 2d 953. Under either consideration, the burden is upon the claimant to prove his case to the satisfaction of the court.

There are several significant and persuasive facts which stand out. Of most importance is the fact that Sterling Newsom, the owner of an 8/9th interest in the property, joined in the instrument in order that his brother, the owner of the other 1/9th, might obtain quickly $400 to pay off his debt. It does not appear anywhere that Sterling was being pressed for the $150 he owed the defendant himself. It had been running since 1929. These parties had made a deed to secure the debt to Rob Newsom. It was then due, and they were in imminent danger of losing their property under the terms of that parol agreement, by which he was to cancel the debt and pay them the balance of $1,000 or $1,100. It is not likely they would have redeemed the land from him and conveyed it absolutely to their prosperous brother-in-law for the same amount they owed on it and disregarded the opportunity to satisfy Freeman's debt and receive $600 or $700 in addition in cash. The price of $550 was inadequate. The grantee withheld the deed from record for over a year. The parties remained in possession and improved the property, treating it just as they had done before. They had sold a right-of-way and timber from the place with the defendant's knowledge and acquiescence. Then we have the positive testimony of Mr. Trivette, a member of the State Senate and apparently a friend of the defendant, though disinterested in the transaction, supporting the testimony of the three parties and another witness over against a broad denial of the defendant and a mere statement of his son that such was not the trade. The contemporaneous situation and acts and the course of action afterward, excepting only the matter of renting of the property, are perfectly consistent with the plaintiff's claim. One or more of these circumstances have been held to be sufficient to declare a deed as a mortgage. Smith v. Berry, 155 Ky. 686, 160 S.W. 247; Phillips v. Phillips' Executor, 248 Ky. 268, 58 S.W. 2d 367 and cases cited; Talley v. Eastland, 259 Ky. 241,

82 S.W.2d 368, 369 and authorities cited; Frazier v. Frazier, 282 Ky. 405, 138 S.W.2d 506; Pennington v. Napier, 304 Ky. 666, 201 S.W.2d 738; Coleman v. Coleman, 306 Ky. 6, 206 S.W.2d 57. Each case must be determined by a consideration of all the surrounding circumstances. McManus' Adm'x v. Kirk, 306 Ky. 606, 208 S.W.2d 953.

We turn to the question of estoppel. It is a basic proposition that the character of the transaction is fixed at its inception and remains so with all the incidents thereof. Subsequent transactions and developments only throw light on the original intention of the parties. That, it may be said, disregards any secret intention of the grantee not disclosed or communicated to the other party. The rule, "Once a mortgage always a mortgage" has become a maxim. Brown v. Spradlin, 136 Ky. 703, 125 S.W. 150; Talley v. Eastland, 259 Ky. 241, 82 S.W.2d 368; Coleman v. Coleman, 306 Ky. 6, 206 S.W.2d 57; 59 C.J.S., Mortgages, sec. 36; 36 Am. Jur., Mortgages, Sec. 125; Parks v. Mulledy, 49 Idaho 546, 290 P. 205, 79 A.L.R. 934.

The evidence concerning the subsequent payment of taxes by the grantee and the execution of the lease in 1944, and what the grantee claims was the payment of rent throughout the years (hereinafter described), is not sufficient, in our opinion, to overcome the conclusion that initially the parties intended the instrument to be a mortgage. There may be instances where the nominal grantor or real mortgagor is estopped to claim the instrument was only a mortgage, but that is where his conduct is such that another person is induced to rely upon the deed to his prejudice. 59 C.J.S., Mortgages, sec. 70.

If these matters of taxes and rents were relied upon by the defendant, it must have been with the mind of procuring an unjust or fraudulent advantage over his wife's brothers, who do not appear to be as smart as he. The doctrine of equitable estoppel was never intended to work a position of gain to a party, its office being to protect him from a loss which, but for the estoppel, he could not escape. The defendant, Andy Greer, of course, could not have claimed to have been misled to his prejudice, so that element of estoppel is absent. Pennington v. Napier, 304 Ky. 666, 201 S.W.2d 738.

However, the maxim does not prevent the parties to such a transaction from subsequently entering into an agreement, having a valid consideration, changing the character of the instrument from a mortgage to an absolute conveyance with the release of the right or equity of redemption. That may be established by direct agreement or acts evidencing such purpose to abandon the right and to have the deed originally intended as a mortgage to stand as an absolute conveyance. But the burden is upon him who makes such claim to prove it. Scholl v. Hopper, 134 Ky. 83, 119 S.W. 770; Broaddus' Heirs v. Potts, 140 Ky. 583, 131 S.W. 510; Sauer v. Fischer, 247 Mich. 283, 225 N.W. 518, 65 A.L.R. 766; 36 Am.Jur., Mortgages, Secs. 3, 190. We look to the evidence under this theory of abandonment.

As stated, Freeman Newsom listed the property and paid the taxes for 1937 and 1938. Greer testified that the Tax Commissioner advised him he would have to list it in his own name and he had done so and paid the taxes thereafter. The record title was in him. The plaintiffs seem to have regarded the sums they paid Greer from time to time as including a refund.

In the matter of rentals, the evidence is conflicting. Freeman Newsom says it was two years after the deed was executed before Greer said anything about being paid and then only that he ought to have something for the use of his money. This he denied, but admitted not to have pressed them for possession or payment. Freeman paid him different sums from time to time. Sterling appears never to have paid anything. He was in the army two or three years during the period. But they signed a writing dated January 1, 1944, evidencing the lease of the property for that year for $100, of which $50 was recited as being then paid and the balance payable March 1. This writing provided that if the rent was not paid, possession would be surrendered. Freeman gave Greer a $60 cow and $20 in cash but never paid anything more under this writing. Neither of the plaintiffs remembered ever having signed any other lease, but Greer says there were several such papers but that they had been destroyed by fire. It appears that Greer regarded all payments as rents and while the others used that term sometimes in referring to the payments they made, they appear to have re-

garded them as interest and partial payments of their debt. It was not until sometime in 1946, ten years after the instrument was executed, that the defendant notified the Newsoms to surrender possession.

Some sort of proposition was made by Freeman Newsom in 1945 or 1946 to pay $3,500 to buy Sterling's 8/9ths interest and settle the whole matter with Greer. The matter was dropped when Freeman learned that the insurance money to be received from the Government on account of the death of his son in the war would not be paid in a lump sum but in installments. We do not attach much significance to all this.

While the payment of taxes by the grantee may on its face indicate that he regarded himself as the owner and negative the idea of a mortgage, at the same time payment of taxes by the grantor for two years after the execution of the deed is further evidence that the instrument was intended to be only a mortgage. Jones on Mortgages, Sec. 329. It is to be noted that the assumption of payment of taxes was voluntary on the part of Greer.

In Brown v. Hermance, 233 Iowa 510, 10 N.W.2d 66, the court regarded the fact that monthly payments were called rent did not necessarily disprove the grantor's claim of equitable ownership of the property. Considering the relative financial conditions of the parties, the apparent inexperience of the Newsoms and other attendant circumstances including the fact the grantors had exercised every prerogative of ownership except the listing of the property for taxation after the expiration of two years, and that the lease was not made until seven years after the deed and that the stipulated rent of $100 was $40 more than Greer regarded as reasonable rent, we do not think it would be equitable to hold this instrument showed a purpose to abandon the claim of a right or to divest the parties of their right of redemption even though some of its provisions were not consistent with the ownership by the Newsoms. Rogers v. Davis, 91 Iowa 730, 59 N. W. 265.

In Brown v. Spradlin, supra, we held that an agreement which allowed the grantor in an absolute deed to have the use of and remain in possession of the

property as long as the grantee desired, free from rent, in consideration of keeping the premises in repair and paying all taxes, did not preclude the conclusion that the instrument was a mortgage. It was further held that while the grantor was in possession he had the right to regard the deed simply as security until such time as the grantee or his successors in interest deprived or attempted to deprive him of the possession. The statute of limitations would not begin to run or laches be imputed to the grantor until then.

On the whole case, the equities are with the appellants. We concur in the special chancellor's conclusion the deed should be construed as a mortgage, but differ with the decision that the appellants are barred from their right to claim it to be such.

Accordingly, the judgment is reversed.