CORRIGAN v AETNA LIFE & CASUALTY

Docket No. 74981. Submitted November 14, 1984, at Grand Rapids.—
Decided February 4, 1985.

Plaintiff, Margaret G. Corrigan, and intervening plaintiff, James
C. Vande Vusse, were divorced in 1978 in the Ottawa Circuit
Court. As part of the property settlement, Vande Vusse became
indebted to Corrigan in the amount of $115,000, to be paid over
a period of time. As security for the debt, Corrigan received
titles to various properties, including one known as the "Char-
levoix House". The titles were to be reconveyed to Vande Vusse
upon payment of the $115,000, pursuant to a payment sched-
ule. Vande Vusse was given possession of the properties includ-
ing the Charlevoix House and lot. The judgment provided that
in the event of default on his obligations of payment (he was
ordered to: assume and keep current all obligations on the
enumerated properties including those obligations in default,
*i.e.,* insurance, mortgage, land contract, assessments, utilities,
taxes, etc.; pay attorney fees; make periodic payments to Corri-
gan; and pay for arrearages on an automobile), Vande Vusse
was required to relinquish possession of the properties to
Corrigan within 10 days of written notice of the default by
Corrigan. Default was defined as payments not made within 15
days after their due date. Vande Vusse became in default and
an order of default and judgment of foreclosure was entered.
After a hearing held on Vande Vusse's motion to set aside the
order and Corrigan's motion to extinguish the right of redemp-
tion, a second judgment of foreclosure was entered, wherein it
was adjudged that Vande Vusse's right of redemption was
extinguished and his possessory interest and any liens on the
properties were terminated, and Corrigan was given a security

REFERENCES FOR POINTS IN HEADNOTES

[1] 24 Am Jur 2d, Divorce and Separation § 706.
Power of court to modify decree for alimony or support to spouse
which was based on agreement of parties. 61 ALR3d 520.

[2] 55 Am Jur 2d, Mortgages § 1.

[3] 46 Am Jur 2d, Judgments § 610.
47 Am Jur 2d, Judgments §§ 1197-1212.
Doctrine of res judicata as applied to default judgments. 77 ALR2d
1410.

interest in the properties to the extent of her share of the marital assets. Corrigan was given the right to sell the properties to satisfy the balance of her share of the unpaid $115,000. Corrigan sold two of the properties. A temporary injunction was issued restraining Corrigan from selling the Charlevoix real estate. The parties and their attorneys then entered into negotiations and reached a settlement which was signed by the parties and their attorneys on September 25, 1979. The settlement was entitled "Settlement Stipulation and Satisfaction of Judgment" and was filed with the court. In that agreement, it was agreed that Corrigan had received $85,648.01 from the sale of various real estate parcels and that there was due to her from Vande Vusse the sum of $37,699.55. Corrigan agreed to execute a quitclaim deed and assignment of land contract to Vande Vusse for another parcel of real estate for which Vande Vusse would assume all obligations. It was further agreed that the parties would execute a land contract on the Charlevoix House providing for the payment of $10,137.50 forthwith and the balance of $27,562.05, plus unpaid taxes, to be paid according to the terms of the land contract at the rate of $300 per month. Vande Vusse made two monthly payments on the Charlevoix House land contract and failed to make any payments thereafter. Corrigan instituted summary proceedings to recover possession of the Charlevoix House in the 90th Judicial District Court based on Vande Vusse's default on the land contract payments. A default judgment was entered on May 20, 1980, which ordered Vande Vusse to pay the delinquent amounts and other fees on or by August 18, 1980. Corrigan was adjudged entitled to a writ of restitution if Vande Vusse did not pay. Vande Vusse's motion to set aside the default judgment was denied. On September 16, 1980, 'at 11 a.m., a writ of restitution was issued and at 4:15 p.m., Vande Vusse deposited the owed sums with the court, after the writ was served and executed. However, the district court ordered the writ quashed and possession returned to Vande Vusse. Corrigan appealed and a circuit court judge set aside the order quashing the writ and remanded the case back to the district court. The district court then set aside its order quashing the writ and returned the Charlevoix House to Corrigan effective September 16, 1980. Vande Vusse filed a motion for relief from the circuit court order, which was denied with prejudice. Vande Vusse did not raise an equitable mortgage claim in that proceeding. On December 20, 1980, the Charlevoix House was destroyed by fire and the premises were sold by Corrigan. The instant suit was commenced by Corrigan in the Kent Circuit Court against defendant, Aetna Life and Casualty, as insurer, to enforce the

fire insurance policy purchased by Corrigan to cover the premises in question. Vande Vusse moved to intervene and the motion was granted. Vande Vusse claimed an ownership interest in the destroyed premises. Aetna filed a counterclaim-crossclaim for interpleader. The court ordered that venue be transferred to the Ottawa Circuit Court for consolidation with the prior divorce action between the parties. Corrigan's application for leave to appeal that order was denied by the Court of Appeals. By order of the Ottawa Circuit Court, Aetna deposited approximately $46,000 into the court. The amount was stipulated by the parties with the understanding that it did not constitute the full amount of insurance proceeds due and owing. Margaret Corrigan filed a motion for summary judgment on the grounds that Vande Vusse's interest in the Charlevoix House was extinguished by the September 16, 1980, writ of restitution and a motion for accelerated judgment on the grounds that Vande Vusse's equitable mortgage claim was barred by prior court actions. Vande Vusse filed a countermotion for summary judgment and his response to both of Corrigan's motions in which he claimed that, even though he did not assert an equitable mortgage defense or claim in prior court actions, he was not barred from raising the claim in the instant proceeding. The court issued an opinion granting Corrigan's motions and dismissed Vande Vusse as a party. Vande Vusse appealed. *Held:*

1. Property settlements in divorce judgments may not be modified by the court in the absence of fraud, mistake or gross inequity. However, absent fraud or coercion, there is nothing to prevent the parties to a divorce judgment from voluntarily negotiating and reaching an arms length bargain to modify the terms of the settlement when it is mutually beneficial for the parties to do so. The parties by agreement changed the terms of the property settlement.

2. A deed, given as a mortgage, may be changed by subsequent agreement of the parties into an absolute deed. The evidence shows this to have been the case. The issuance of the writ of restitution foreclosed Vande Vusse's right of redemption.

3. Vande Vusse was precluded from raising his equitable mortgage claim by the doctrine of res judicata.

Affirmed.

1. DIVORCE — PROPERTY SETTLEMENTS — MODIFICATION OF JUDGMENT.
    Property settlements in a divorce judgment may not be modified by the court in the absence of fraud, mistake or gross inequity; however, absent fraud or coercion, there is nothing to prevent

the parties to a divorce judgment from voluntarily negotiating and reaching an arms length bargain to modify the terms of the settlement when it is mutually beneficial for the parties to do so.

2. DEEDS — MORTGAGES — REAL PROPERTY.
    A deed, given as a mortgage, may be changed by subsequent agreement of the parties into an absolute deed.

3. JUDGMENTS — RES JUDICATA — SUMMARY JUDGMENT — DEFAULT JUDGMENT.
    A judgment is considered to be a determination on the merits, and thereby triggers the doctrine of res judicata upon relitigation, even if the action was resolved by a summary or default judgment.

*Meana & Spruit, P.C.* (by *Richard M. Spruit* and *Patti L. McKenney),* for plaintiff.

*Colista, Urso & Green* (by *Constance J. Allen),* for intervenor.

Before: MACKENZIE, P.J., and V. J. BRENNAN and R. E. ROBINSON,* JJ.

V. J. BRENNAN, J. Intervening plaintiff-appellant, James Vande Vusse, appeals as of right from a March 14, 1984, Ottawa County Circuit Court order reflecting the finality of the judgment against him as set forth in an October 31, 1983, order which granted plaintiff-appellee, Margaret Corrigan's motions for summary judgment, GCR 1963, 117.2(3), and accelerated judgment, GCR 1963, 116.1(5), and dismissed Vande Vusse as a party from the instant suit.

Following a negotiated property settlement, the parties were divorced on March 10, 1978, in the Ottawa County Circuit Court. As part of the property settlement, Vande Vusse became indebted to Corrigan in the amount of $115,000, to be paid

---

* Former circuit judge, sitting on the Court of Appeals by assignment.

over a period of time. As security for the debt, Corrigan received titles to various properties, including the "Charlevoix House"; the titles were to be reconveyed to Vande Vusse upon payment of the $115,000, pursuant to a payment schedule. Vande Vusse was given possession of the properties including the Charlevoix House and lot.

The judgment provided, however, that in the event of default on his obligations of payment (he was ordered to: assume and keep current all obligations on the enumerated properties including those obligations in default, *i.e.,* insurance, mortgage, land contract, assessments, utilities, taxes, etc.; pay attorney fees; make periodic payments to Corrigan; pay for arrearages on an automobile), Vande Vusse was required to relinquish possession of the properties to Corrigan within 10 days of written notice of the default by Corrigan or her agents. Default was defined as payments not made within 15 days after their due date.

Subsequently, Vande Vusse became in default and an order of default and judgment of foreclosure was entered on November 15, 1978. After a hearing held on Vande Vusse's motion to set aside the order and Corrigan's motion to extinguish the right of redemption, a second judgment of foreclosure was entered on March 5, 1979, where it was ordered and adjudged *inter alia* that Vande Vusse's right of redemption was extinguished, his possessory interest and any liens on the properties were terminated and Corrigan was given a security interest in the properties to the extent of her share of the marital assets. Corrigan was given the right to sell the properties to satisfy the balance of her share of the unpaid $115,000.

Corrigan sold two of the properties. A temporary injunction was issued under the judgment of divorce on May 11, 1979, restraining Corrigan from

selling the Charlevoix real estate. The parties and their attorneys then entered into negotiations and reached a settlement which was signed by the parties and their attorneys on September 25, 1979. The settlement was entitled "Settlement Stipulation and Satisfaction of Judgment" and was filed with the court on October 1, 1979.

In that agreement, it was agreed that Corrigan had received some $85,648.01 from the sale of various real estate parcels and that there was due to her from Vande Vusse the sum of $37,699.55. Corrigan agreed to execute a quitclaim deed and assignment of land contract to Vande Vusse for another parcel of real estate for which Vande Vusse would assume all obligations. It was further agreed that the parties would execute a land contract on the Charlevoix House providing for the payment of $10,137.50 forthwith and the balance of $27,562.05, plus unpaid taxes, to be paid according to the terms of the land contract at the rate of $300 per month. Vande Vusse made two monthly payments on the Charlevoix House land contract and failed to make any payments thereafter.

On April 8, 1980, Corrigan instituted summary proceedings to recover possession of the Charlevoix House in the 90th Judicial District Court based on Vande Vusse's default on the land contract payments. A default judgment was entered on May 20, 1980, which ordered Vande Vusse to pay the delinquent amounts and other fees on or by August 18, 1980. Corrigan was adjudged entitled to a writ of restitution if Vande Vusse did not pay. Vande Vusse's motion to set aside the default judgment was denied. On September 16, 1980, at 11 a.m. a writ of restitution was issued and at 4:15 p.m., Vande Vusse deposited the owed sums with the court, after the writ was served and executed. However, the district court judge ordered the writ

quashed and possession returned to Vande Vusse. Corrigan appealed and on December 10, 1980, a circuit court judge set aside the September 16, 1980, order quashing the writ and he remanded the case back to the district court. On January 6, 1981, the district court set aside its September 16, 1980, order quashing the writ and returned the Charlevoix House to Corrigan effective September 16, 1980. On March 17, 1981, Vande Vusse filed a motion for relief from the December 10, 1980, circuit court order, which was denied with prejudice in May, 1981. Vande Vusse did not raise an equitable mortgage claim.

On December 20, 1980, the Charlevoix House was destroyed by fire and the premises were sold by Corrigan. The instant suit was commenced by Corrigan in Kent County Circuit Court on April 22, 1981, against Aetna Life and Casualty, as insurer, to enforce the fire insurance policy purchased by Corrigan to cover the premises in question.

On May 6, 1981, Vande Vusse's April 30, 1981, motion to intervene was granted by order of Kent Circuit Court Judge George R. Cook. Vande Vusse claimed an ownership interest in the destroyed premises. On July 23, 1981, Aetna filed a counterclaim-crossclaim for interpleader. Corrigan's June 10, 1981, motion to set aside the intervention order was denied by Judge Cook on September 17, 1981, and by order dated October 22, 1981, Judge Cook also ordered that venue be transferred to the Ottawa County Circuit Court (to be assigned to Judge Bosman) for consolidation with the prior divorce action between the parties. Corrigan's application for leave to appeal Judge Cook's order was denied by this Court on February 18, 1982.

On August 30, 1982, by order of Judge Bosman, Aetna deposited approximately $46,000 into the

Ottawa County Circuit Court; the amount was stipulated by the parties with the understanding that it did not constitute the full amount of insurance proceeds due and owing. On October 5, 1982, by order of Judge Bosman, the amount deposited with the court was deposited in a trust account. On November 1, 1982, Margaret Corrigan filed a motion for summary judgment, GCR 1963, 117.2(3), on grounds that Vande Vusse's interest in the Charlevoix House was extinguished by the September 16, 1980, writ of restitution, and a motion for accelerated judgment, GCR 1963, 116.1(5), on the grounds that Vande Vusse's equitable mortgage claim was barred by prior court actions.

On December 8, 1982, Vande Vusse filed a countermotion for summary judgment, GCR 1963, 117.2(3), and his response to both of Corrigan's motions in which he claimed that, even though he did not assert an equitable mortgage defense or claim in prior court actions, he was not barred from raising the claim in the instant proceedings.

On October 19, 1983, Judge Bosman issued an opinion granting Corrigan's motions, and he dismissed Vande Vusse as a party in the suit. The order was entered on October 31, 1983, and amended on March 14, 1984.

It is Vande Vusse's claim that a property settlement reduced to judgment in a divorce action cannot be changed absent fraud, duress or mutual mistake and that the trial court erred in granting summary judgment to Corrigan on the grounds that the subsequent agreement of the parties was valid and binding on both parties.

Property settlements in divorce judgments "may not be modified in the absence of fraud, mistake or gross inequity". *Villadsen v Villadsen,* 123 Mich App 472, 476; 333 NW2d 311 (1983), *lv den* 418

Mich 884 (1983). See also *Kline v Kline,* 92 Mich App 62, 71; 284 NW2d 488 (1979). However, absent fraud or coercion, there is nothing to prevent the parties to a divorce judgment from voluntarily negotiating and reaching an arms length bargain to modify the terms of the settlement when it is mutually beneficial for the parties to do so. This was not a petition to modify the property settlement through the courts.

In this case, as aptly stated by the trial court, Vande Vusse was in default of the settlement agreement he originally made which was incorporated in the judgment of divorce. At that time, Corrigan had the right to sell the properties as an equitable mortgagee and to apply the proceeds of the sale(s) to satisfy the obligation owed to her.

Vande Vusse did not want to lose the Charlevoix House, even though he stood in jeopardy of doing so (through his own inaction on the divorce judgment), and with the assistance of his attorney he entered into negotiations with Corrigan and struck a new bargain to retain possession of the Charlevoix House. The agreement reached by the consent of both parties was in full and complete satisfaction of the terms of the judgment of divorce. Corrigan gave up her right to immediately sell the property and obtain the money owed to her. Vande Vusse obtained title to one of the other parcels of property and changed his status as an equitable mortgagor to that of a vendee, under a land contract to purchase the Charlevoix House, with the rights and obligations afforded to a vendee. These obligations included monthly payments on the land contract.

As provided by the land contract, if Vande Vusse defaulted on the land contract payments, Corrigan, as vendor, had the right to declare a forfeiture and recover possession of the premises

via summary proceedings. See also MCL 600.5726; MSA 27A.5726.

We find it difficult to sympathize with Vande Vusse who was given two chances to retain possession and his interests and rights in the Charlevoix House. In the first instance, he defaulted on the divorce judgment. Under the terms of the judgment, Corrigan was, therefore, entitled to possession of the premises. In the second instance, having been given a new chance as vendee under a land contract, Vande Vusse failed to make the necessary payments and summary proceedings to recover possession were initiated by Corrigan. He also did not make any effort to redeem his interest in the land contract—he had three months to do so after the default judgment and judgment of possession was entered on May 20, 1980. See MCL 600.5744(3); MSA 27A.5744(3). The writ of restitution was issued on September 16, 1980.

As provided by MCL 600.5744(7); MSA 27A.5744(7):

"Issuance of a writ of restitution, based on a judgment of possession in consequence of the forfeiture of an executory contract for the purchase of the premises, shall foreclose any equitable right of redemption which the purchaser may have or claim in the premises."

Corrigan agrees with Vande Vusse that the *original* nature of her interest in the properties was that of an equitable mortgagee. The execution of the land contract, however, changed the status of Corrigan as equitable mortgagee to that of vendor with a fee absolute title in the property by subsequent agreement of the parties. "It is well established that a deed, given as a mortgage, may be changed by subsequent agreement of the parties into an absolute deed." *Sauer v Fischer,* 247 Mich 283, 287; 225 NW 518 (1929).

As stated in *Reid v Dowd,* 257 Mich 492, 496-497; 241 NW2d 174 (1932):

"It has been held almost universally that the form of the instruments evidencing the transaction is not conclusive; but when the transaction is one merely of loaning money on the one hand and on the other promising to repay with security therefor, the relation has been held that of mortgagor and mortgagee, notwithstanding the transaction is evidenced by giving a deed and taking back a land contract. *However, consideration must be given to circumstances which differentiate the nature of the transaction from being one of a mere loan, and also to all the facts or circumstances which will establish the true intention of the parties and which reveal the equities as between the parties.* In the absence of an attempt to circumvent the mortgagor's statutory right of redemption, there seems to be no legal objection to a transaction wherein the grantor on the same day takes back a contract to purchase from his grantee the property conveyed. And if the transaction involves something more than a mere loan of money, and the incident deed with the contract back is in accord with the intent and agreement of the parties, *courts are bound to give effect to the contract as consummated* rather than to create and substitute a different contractual relation between the parties." (Emphasis added.)

The land contract purchase price was for the exact sum owed to Corrigan. It appears to us that it was the intent of the parties to change the nature of Corrigan's interest in the Charlevoix House by creating an absolute title in Corrigan—if Vande Vusse defaulted as buyer, Corrigan, as seller, retained the deed, and had the option to regain possession of the premises as vendor, subject to the statutory period of redemption before a writ of restitution was issued.

Corrigan was the purchaser of the fire insurance policy in her own name, for her own benefit. The

policy was not purchased under the terms of the land contract. After Vande Vusse's period of redemption expired, the fire destroyed the premises. His rights and interests in the Charlevoix House were extinguished and Corrigan was entitled to the proceeds under the insurance policy.

We also find no merit in Vande Vusse's claim that he is not precluded from raising his equitable mortgage argument by the doctrine of res judicata. See *Bocinski v Krzeminski,* 253 Mich 48, 50; 234 NW 103 (1931). "A judgment is considered to be a determination on the merits, and thereby triggers the doctrine of res judicata upon relitigation, even if the action was resolved by a summary or default judgment." *Detroit v Nortown Theatre, Inc,* 116 Mich App 386, 392; 323 NW2d 411 (1982), *lv den* 418 Mich 875 (1983).

Affirmed. We retain no further jurisdiction.